37 Cal.App.4th 1186 (1995)
44 Cal. Rptr. 22
In re RONALD R., a Person Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
LUCIA R., Defendant and Appellant.
Docket No. F022654.
Court of Appeals of California, Fifth District.
August 3, 1995.
*1188 COUNSEL
Jane Winer, under appointment by the Court of Appeal, for Defendant and Appellant.
Phillip S. Cronin, County Counsel, and William G. Smith, Deputy County Counsel, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
THAXTER, J.
Lucia R., the natural mother of Ronald R., appeals from a juvenile court order terminating her parental rights and ordering adoption as the appropriate permanent plan for Ronald. We will affirm.

PROCEDURAL HISTORY
On November 3, 1992, respondent Fresno County Department of Social Services (DSS) filed a petition alleging that one-week-old Ronald R. was a minor within the jurisdiction of the juvenile court pursuant to Welfare and Institutions Code[1] section 300, subdivisions (a), (b), and (g). The petition asserted that Ronald's mother, appellant Lucia R., had used cocaine and heroin daily during pregnancy, and that as a result, Ronald was born "with low birth weight, testing positive for heroin and cocaine in his system and exhibiting the negative symptoms of prenatal drug use, namely, jitteriness, jaundice and stiffness." The petition further alleged that Ronald was at risk of serious physical harm due to Lucia's inability to supervise or protect him adequately, and that Ronald was without any provision for support. Ronald was already in DSS custody.
On November 4, 1992, a detention hearing was held. Lucia was present and the public defender was appointed to represent her. Lucia denied the allegations in the petition.
*1189 The court read and considered a social worker's report stating that Ronald's older brother, Jose M., was also born with cocaine in his system and was placed in protective custody. At that time Lucia agreed to undergo drug treatment and cooperate with DSS, and Jose was returned to her custody; however, during a subsequent 90-day period when family maintenance services were provided to Lucia, she was "evasive."
The court released Ronald for placement in foster care or with a suitable relative, and further allowed that Ronald could be released to Lucia "if enrolled in a suitable treatment program." The court also authorized reasonable supervised visitation for Lucia.
A jurisdictional hearing was held on January 4, 1993. Lucia was again present with counsel. The jurisdictional allegation based on section 300, subdivision (g) was stricken by request of DSS. Lucia submitted to the jurisdiction of the court, which calendared a dispositional hearing for January 19. Statements by counsel and the DSS officer indicated that Lucia had made at least one attempt to contact the social worker to set up visitation, but had not left any telephone number at which she could be reached.
The social study submitted for the January 4th hearing, and considered by the court, was extensive. It contained copies of eight prior child protective services referrals of Lucia between May 1990 and April 1992 dealing with her drug use, with her failure to care for Ronald's older siblings, and with Jose's positive toxicology report at birth. Also included was a narrative documentation of Lucia's intravenous use of heroin, cocaine, and methadone during her pregnancy with Ronald. Finally, hospital records regarding Ronald's blood screening and postnatal symptoms were included.
At the January 19th dispositional hearing, Lucia was again present with counsel. The social worker's report submitted for that hearing indicated that Lucia had taken significant steps, moving into her mother's home, seeking substance abuse treatment, keeping visitation appointments with Ronald, and maintaining contact with DSS. The court directed that there be no immediate change in placement and that reunification services (including reasonable visitation) be offered to Lucia. A hearing for review of dependency status (six-month review) was calendared for July 16, 1993. On May 18, this hearing was vacated and rescheduled for July 30.
Lucia failed to appear for the July 30th setting of the six-month review hearing. The court found by clear and convincing evidence that notice of the hearing had been served, but ordered the six-month review hearing continued to August 26, 1993, because the social study was late. A notation on the minute order states: "Dept to re-notice or provide dec[laration] of search."
*1190 Lucia again failed to appear on August 26, 1993. The court again continued the six-month review hearing, this time to September 16, "for counsel to contact parents. New notice to go out."
Lucia again failed to appear for the September 16th review hearing. The court found that notice had been served but Lucia's whereabouts were unknown, and it directed counsel to attempt to contact Lucia for a rescheduled hearing on October 1, 1993. A social study submitted to the court for this hearing indicated Ronald remained in appropriate foster care, and Lucia's whereabouts had been unknown since March 12, 1993. The report stated that Lucia "has not attempted contact with the [social worker] since date of transfer to the Family Reunification Unit." Lucia's mother was caring for Ronald's two siblings.
Lucia was again not present for the six-month review hearing on October 1, and the following exchange took place immediately after the matter was called for hearing.
"Ms. ROMERO: Carmen Romero, on behalf of Lucia R[.], the mother. She's not present.
"I understand that a declaration of search has been submitted.
"THE COURT: That's correct.
"Ms. ROMERO: Your Honor, on September 17th, I wrote to her at the only address which I had which, apparently, is her mother's address, ... I told her that she had had a hearing on the 16th of September and that I had requested the Matter be continued to today's date so she could come in and contact me. I told her that services would more than likely be terminated if she did not appear, and I would be asking that I be relieved. And she failed to be here. There was an error in my letter. I indicated she should be here on September 16th. In the body of the letter I indicated that her next date was October the 1st. This morning I called her mother's house to clarify that. Her mother said she has not seen her daughter in over a month. She does not know where she lives. She had received my letter, but had been unable to give that to her daughter because she didn't know where she was. So I don't know what more to do. I don't know that my error hurt in any way, since she wasn't there to receive a letter. And I'm requesting that I be relieved.
"THE COURT: The request to be relieved is granted."
A "Declaration of Search" was filed by Emilia Torres, documenting attempts that had been made to locate Lucia through public records and *1191 Lucia's mother. The court found that a "due diligence search" had been made and an affidavit thereof filed, but that Lucia's whereabouts remained unknown and no notice had been served. The presumed father's attorney was also relieved. The court, finding that neither parent had had any contact with Ronald for the prior six months, found prima facie evidence that return of Ronald to either parent would be detrimental and there was no likely date of return. The court further ordered reunification services terminated and set a section 366.26 "permanency planning" hearing for February 2, 1994. That hearing was subsequently continued to May 4, 1994.
Various attempts were made to notify Lucia of the May 4th hearing. She was eventually served personally at the Fresno County jail.
Lucia was present for the May 4th hearing. The court appointed new counsel for Lucia and ordered the hearing continued to May 18. On May 18, Lucia was again not present. Her new attorney appeared, asserted a conflict, and was relieved. New counsel was appointed, and the hearing was continued to May 25, and later to June 1.
On June 1, 1994, Lucia was again present with counsel. DSS staff member Carolyn Chamberlain testified she had assessed Ronald's case for purposes of recommending a permanent plan and had concluded Ronald was adoptable; his foster parents had applied for adoption, and the situation was under review. Chamberlain noted the social studies were incorrect in asserting that Lucia and Ronald had not had any contact since Ronald's birth; however, there clearly was no contact since (at the very latest) February 1993, and the presumed father had never had any contact with Ronald. The foster parents had cooperated in permitting visits with Ronald's grandmother, and they had indicated their willingness to continue to allow contact with her and with Ronald's siblings.
When Lucia indicated she wanted to call her brother as a witness, her attorney requested the case be set for trial. The court set trial for July 19. It was later continued to September 7, 1994.
On September 7 Lucia was present with counsel. At that time, however, Lucia's attorney stated that Lucia "confirmed with me today that she wants to submit on [the social worker's] report and does waive trial and her other rights." After again hearing testimony from social worker Chamberlain and hearing statements from counsel, the court made the necessary findings, ordered the termination of Lucia's parental rights, and ordered adoption as the appropriate permanent plan for Ronald.
Lucia filed a timely notice of appeal from the September 7, 1994, judgment.

*1192 DISCUSSION
(1) (See fn. 2.) Lucia argues that reversal is required on two separate grounds: (1) the juvenile court improperly relieved her trial counsel at the six-month review hearing and violated her statutory and due process rights by terminating reunification and scheduling a permanency planning hearing while she was absent and unrepresented; and, (2) the court lacked authority to terminate reunification and schedule the permanency planning hearing at the first judicial review hearing.[2] We address the second contention first.
I. The Juvenile Court Was Authorized to Terminate Reunification Services and Schedule a Permanency Planning Hearing at the Six-month Review Hearing.[*]
.... .... .... .... .... .... .... .
II. Permitting Lucia's Counsel to Withdraw and Ordering Termination of Reunification Services and a Permanency Planning Hearing With Lucia Absent and Unrepresented by Counsel Was Harmless Error Not Amounting to a Denial of Due Process.
(2) At the six-month review on October 1, 1993 (the hearing in question here), the court permitted Lucia's appointed counsel to withdraw from the case for the sole stated reason that counsel had been unable to contact her. Lucia was not present at the hearing, despite what the court determined to be a "[d]ue and diligent search" for her. The court found by clear and convincing evidence that Ronald and Lucia had had no contact for six months and ordered reunification services terminated. Finding no substantial probability that Ronald would be returned to Lucia's home within six months, the court then scheduled a permanency planning hearing.
Lucia argues the court erred in permitting counsel to withdraw, and a due process violation took place when the court below made the critical decisions to terminate reunification services and schedule a permanency planning hearing outside her presence and after permitting her attorney to withdraw.

Statutory right to counsel
Section 317 provides in pertinent part:
*1193 "(a) When it appears to the court that a parent or guardian of the minor desires counsel but is presently financially unable to afford and cannot for that reason employ counsel, the court may appoint counsel as provided in this section.
".... .... .... .... .... .... ....
"(d) The counsel appointed by the court shall represent the parent ... at the detention hearing and at all subsequent proceedings before the juvenile court. Counsel shall continue to represent the parent ... unless relieved by the court upon the substitution of other counsel or for cause. The representation shall include representing the parent ... in termination proceedings and in those proceedings relating to the institution or setting aside of a legal guardianship." (Italics added.)
In In re Tanya H. (1993) 17 Cal. App.4th 825 [21 Cal. Rptr.2d 503], the Second District found clear and unambiguous the requirement that appointed counsel serve until relieved "upon the substitution of other counsel or for cause." (At p. 829.) The court then went on to define "for cause": "Although `for cause' is not defined by the statute, the term is neither vague nor ambiguous. In the absence of express guidelines, the purpose of a statute supplies the standards to be followed in its application. [Citations.] The purpose of this statute is to provide an attorney for a parent who `desires counsel but is presently financially unable to afford and cannot for that reason employ counsel' (§ 317, subd. (a)) and the attorney, once appointed, is to represent the parent at `the detention hearing and at all subsequent proceedings before the juvenile court ... unless relieved by the court upon the substitution of other counsel or for cause.' (§ 317, subd. (d).)
"So viewed, `for cause' must include some good reason personal to the individual sought to be removed [citation], one which affects or concerns the ability or fitness of the appointee to perform the duty imposed upon him [citations] or relates to and affects the administration of the office [citation]. Stated otherwise, `for cause' means inefficiency, incompetency or other kindred disqualifications. [Citations.]" (In re Tanya H., supra, 17 Cal. App.4th at p. 831, fn. 5, italics added.)
DSS relies on the sentence prior to the emphasized one above in support of the contention that "for cause" may include the instant situation. We disagree. The Tanya H. court's entire statement, including the emphasized sentence, does not support DSS's position. Nothing in the record suggests that appointed counsel's inability to contact Lucia was due to inefficiency, incompetency, or any other like reason personal to counsel.
*1194 DSS also relies on Code of Civil Procedure section 284. That section provides: "The attorney in an action or special proceeding may be changed at any time before or after judgment of final determination, as follows:
".... .... .... .... .... .... ....
"2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other."
According to DSS, "[t]he requirements of Code of Civil Procedure section 284, subdivision 2 were fully complied with herein."
Code of Civil Procedure section 284, however, governs the bare procedure for change of counsel in an action. It does not expressly permit counsel to abandon his or her client at a crucial stage in the proceedings simply by giving notice and applying to the court. Moreover, it clearly cannot supersede section 317 (which specifically governs dependency actions).[6]
Under the express provisions of section 317, Lucia's appointed counsel should not have withdrawn from her representation at the beginning of the October 1st hearing without stated cause and without requesting that the court appoint substitute counsel or grant a continuance, and the court should not have permitted it.
*1195 However, the violation of a parent's statutory right to counsel in dependency proceedings is reviewed under the standard set out in People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. (See In re Nalani C. (1988) 199 Cal. App.3d 1017, 1028 [245 Cal. Rptr. 264]; see also People v. Frank (1985) 38 Cal.3d 711, 730 [214 Cal. Rptr. 801, 700 P.2d 415]; People v. Cooley (1993) 14 Cal. App.4th 1394, 1399 [18 Cal. Rptr.2d 346].) And here, as will become clear from the due process discussion below, it is not "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (People v. Watson, supra, at p. 836.)

Due process
The court's relief of appointed counsel without appointing a successor meant Lucia was both absent[7] and without representation at the time the decision was made to terminate reunification services and schedule the permanency planning hearing. These particular decisions constituted the critical juncture in the dependency proceedings.
"Clearly, an order terminating reunification services and setting a selection and implementation hearing, while interim and not itself appealable, involves the merits of or necessarily affects the subsequent order terminating parental rights, and substantially affects the rights of the parties. It is at this juncture, and not at the subsequent section 366.26 hearing, that the critical decision regarding parental rights is made. (See Cynthia D. [v. Superior Court (1993)] 5 Cal.4th [242,] 250 [19 Cal. Rptr.2d 698, 851 P.2d 1307].)" (In re Matthew C. (1993) 6 Cal.4th 386, 396 [24 Cal. Rptr.2d 765, 862 P.2d 765].)
Lucia contends she had a due process right to counsel at the six-month review hearing, where the decisions to terminate reunification and set a permanency planning hearing were made.
In Lassiter v. Department of Social Services (1981) 452 U.S. 18 [68 L.Ed.2d 640, 101 S.Ct. 2153], the United States Supreme Court held that whether a parent has a federal due process right to counsel during termination proceedings must be determined on a case-by-case basis, applying three factors set forth in Mathews v. Eldridge (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893]: "The dispositive question, which must now be addressed, is *1196 whether the three Eldridge factors, when weighed against the presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty, suffice to rebut that presumption and thus to lead to the conclusion that the Due Process Clause requires the appointment of counsel when a State seeks to terminate an indigent's parental status. To summarize the above discussion of the Eldridge factors: the parent's interest is an extremely important one (and may be supplemented by the dangers of criminal liability inherent in some termination proceedings); the State shares with the parent an interest in a correct decision, has a relatively weak pecuniary interest, and, in some but not all cases, has a possibly stronger interest in informal procedures; and the complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high.
"If, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, it could not be said that the Eldridge factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel. But since the Eldridge factors will not always be so distributed, and since `due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed,' Gagnon v. Scarpelli, 411 U.S., [(1973) 778] at 788 [36 L.Ed.2d 656, 665, 93 S.Ct. 1756], neither can we say that the Constitution requires the appointment of counsel in every parental termination proceeding. We therefore adopt the standard found appropriate in Gagnon v. Scarpelli, and leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review." (452 U.S. at pp. 31-32 [68 L.Ed.2d at pp. 652-653].)
In short, whether a parent has a due process right to representation at any given juncture in a dependency proceeding that may result in termination of parental rights must be evaluated on a case-by-case basis. (See In re Arturo A. (1992) 8 Cal. App.4th 229, 238 [10 Cal. Rptr.2d 131].)
In post-Lassiter dependency cases in California, it appears settled that whether a due process right to counsel existed at the lower court hearing depends on whether the presence of counsel would have made a "determinative difference" in the outcome of the proceeding. (Lassiter v. Department of Social Services, supra, 452 U.S. at p. 33 [68 L.Ed.2d at p. 653].) "... Under Lassiter, in order to establish that she/he was deprived of this due process constitutional right to representation by counsel, a parent must *1197 demonstrate on appeal that the absence of counsel made a `determinative difference' and `render[ed] the proceedings fundamentally unfair.' (Lassiter v. Department of Social Services, supra, 452 U.S. at p. 33 [].)" (In re Emilye A. (1992) 9 Cal. App.4th 1695, 1705 [12 Cal. Rptr.2d 294], italics added; see also In re Arturo A., supra, 8 Cal. App.4th at p. 238.)
Lucia has not shown that the presence of counsel would have resulted in a different outcome at the six-month review hearing. She argues that the presumed due process violation is reversible per se, but fails to show the due process violation itself. Indeed, the only contention she makes as to how counsel might have made a difference at the hearing is that counsel "could have vigorously represented [Lucia] at the hearing, by making the appropriate ... legal objection to the court's proposal to terminate reunification services after only eight and a half months." However, as discussed in the unpublished part of this opinion, the court possessed the authority to make that order; counsel's objection would almost certainly have failed given Lucia's complete failure to participate in reunification, or indeed, to demonstrate any interest in the outcome of the proceedings or the welfare of Ronald.
We conclude that, despite the court's error in permitting counsel to withdraw, no cognizable due process violation occurred at the six-month review hearing, and no showing was made that would justify reversal on the violation of the statutory right to counsel under People v. Watson, supra, 46 Cal.2d 818, 836.

DISPOSITION
Judgment affirmed.
Stone (W.A.), Acting P.J., and Harris, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of part I of Discussion.
[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] Although an order denying reunification services and ordering a section 366.26 permanency planning hearing is not directly appealable (§ 366.26, subd. (k)), it may be attacked on a subsequent appeal from the order terminating parental rights. (In re Rebekah R. (1994) 27 Cal. App.4th 1638, 1648 [33 Cal. Rptr.2d 265].) Thus, the issues are properly before us on this appeal.
[*] See footnote, ante, page 1186.
[6] The parties disagree as to the applicability of California Rules of Court, rule 376 to the instant case. Rule 376 provides a more detailed procedural scheme for applying under Code of Civil Procedure section 284 to be relieved as counsel; it requires, inter alia, service of notice on all parties, including a declaration by counsel explaining why the motion is being made.

DSS contends that California Rules of Court, rule 376 is not applicable in dependency proceedings.
"In passing, Respondent notes that although Code of Civil Procedure section 284 is applicable in juvenile dependency proceedings, ... rule 376 is not. Rule 376 is contained [in] Division II of the California Rules of Court (Rules 301-391), a division entitled `Civil Law and Motion Rules.' Rule 303(a)(1) specifically excludes from Division II coverage `causes arising under the Welfare and Institutions Code.'"
California Rules of Court, rule 301 states that division II applies to "proceedings in civil law and motion in superior, municipal, and justice courts and to discovery proceedings in family law and probate." Rule 303(a) defines "law and motion" as including any proceedings "[o]n application before trial for an order, except for causes arising under the Welfare and Institutions Code, ..."
A motion to be relieved is, by the express terms of Code of Civil Procedure section 284, subdivision 2, an "application" for an "order." Thus, title 2, division II of the California Rules of Court is not applicable here, and the failure to follow the procedure outlined in rule 376 is irrelevant. We note, however, that two courts have cited the rule in dependency cases without noting or distinguishing rules 301 and 303. (See In re Andrew S. (1994) 27 Cal. App.4th 541, 546 [32 Cal. Rptr.2d 670]; In re Rubin P. (1991) 2 Cal. App.4th 306, 312, fn. 5 [3 Cal. Rptr.2d 301].)
[7] There is no statutory requirement that a parent attend review hearings, although the court may direct the parent's presence. (See §§ 338, 362.3.) Nothing in the record indicates that Lucia was ordered to appear for the October 1st hearing; it appears she did not receive actual notice either of the hearing date or of counsel's threat to seek to withdraw if she did not appear.