[No. B136038. Second Dist., Div. Four. Aug. 9, 2000.]

In re MELVIN A. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
MARIA L., Defendant and Appellant.

**COUNSEL**

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, and Patrick D. Goodman, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

Defendant Maria L. appeals from orders of the juvenile court (1) discontinuing her visitation with the children, (2) denying a continuance of the hearing regarding termination of parental rights, (3) denying her counsel's request to be relieved, and (4) terminating her parental rights to her children, Melvin and Xena A. (Welf. & Inst. Code, § 366.26.)[1] Appellant contends the juvenile court committed various errors.

We conclude that to the extent appellant purports to appeal from the first three orders enumerated above, the appeal is untimely and is dismissed. Although we conclude the trial court erred in staying the order terminating parental rights pending completion of an adoptive home study, we find the error to be harmless. Finding no other error regarding the order terminating parental rights, we affirm that order.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 1997, Melvin (born in February 1995) and Xena (born in July 1996) were declared dependents of the juvenile court pursuant to a section 300 petition filed on their behalf in February 1997 by the Los Angeles County Department of Children and Family Services (Department).[2] The children initially were placed in the care of their paternal grandmother, then with a foster parent, and were later returned to the paternal grandmother's care.

At the section 366.22 permanency review hearing held in October 1998, reunification services were terminated and the court set a section 366.26 selection and implementation hearing for February 10, 1999.

Although she received proper notice, appellant did not appear at the hearing on February 10, 1999, but was represented by Attorney Osias. Attorney Mordetzky also appeared and requested appointment on behalf of appellant because Osias was asking to be relieved. The court initially relieved Osias, appointed Mordetzky, and granted her request for a continuance, but rescinded each of those orders and reappointed Osias after counsel

---

[1]All further statutory references are to the Welfare and Institutions Code unless indicated otherwise.

[2]The children's older half siblings, Shalanda and Ronald, were also declared dependents of the juvenile court; however they are not subjects of this appeal.

for the Department objected that appellant was absent and would not be able to go forward even if Osias had not substituted out. Osias requested a continuance on the ground that bad weather might be the cause of appellant's failure to appear, but the court denied the request. The court proceeded first on the issues involving Shalanda and Ronald, then turned to the section 366.26 hearing regarding Melvin and Xena.

The children's counsel requested a continuance to permit the adoptive home study to be finalized, and appellant's counsel joined in the request. However, the juvenile court proceeded, finding by clear and convincing evidence that the children are likely to be adopted. The court identified adoption as the permanent plan and ordered the Department to proceed with adoptive planning and to provide permanent placement services. The court ordered that parental rights to Melvin and Xena were terminated but stayed that order, indicating "the Department can walk it on to lift the stay when the home study is completed." The court also stated: "No visits are ordered." Attorney Mordetzky was substituted in as counsel for appellant. Hearings to review the permanent plan were held in June and July 1999. At the latter hearing, the matter was continued until October 1999 to provide more time for completion of the home study.

In its social study report dated October 4, 1999, the Department informed the juvenile court that the adoptive home study was near completion and recommended that the stay be lifted. At the hearing on that date, the court lifted the stay on the order terminating parental rights.

Appellant filed a notice of appeal on October 7, 1999, from the "termination of parental rights on October 4, 1999."

## DISCUSSION

### I. *The Juvenile Court Erred in Issuing a Stay of the Order Terminating Parental Rights, but the Error Was Harmless*

Appellant contends that the eight-month delay between issuance of the stayed termination order and its execution deprived her of her due process right to a speedy trial. ■ As respondent points out, a parent in a juvenile dependency proceeding—which is civil in nature—is not an "accused" entitled to a "speedy and public trial" guaranteed by the Sixth Amendment of the United States Constitution.

■ We will, however, address appellant's more general contention that the eight-month delay, caused by the court's stay of the termination orders,

precluded a timely consideration of her appeal and violated her due process rights. She contends she was prejudiced by the delay in that visitation ceased, undermining the parent-child relationship that existed and diminishing her ability to defend in the event of a retrial on the issue of termination of her parental rights.

We agree that it was error for the trial court to order appellant's parental rights terminated but indefinitely stay that order, leaving appellant in limbo as to the status of the termination order and her ability to immediately appeal that order. This action by the court was inconsistent with the fundamental policy of dependency law which seeks to resolve cases expeditiously. (See, e.g., § 395 [dependency appeal has precedence over all other cases].)

Pursuant to section 366.22, subdivision (a)(3), the court was required to hold the section 366.26 hearing within 120 days of the section 366.22 permanency review hearing. Section 352 permits juvenile courts to continue dependency hearings beyond the statutory time limit otherwise required upon a showing of good cause, but "only for that period of time shown to be necessary." (See also Cal. Rules of Court, rule 1422(a).) A continuance was requested by counsel for the Department to allow for completion of the adoptive home study. Instead, the court proceeded with the hearing, terminated appellant's parental rights, and stayed that order.

We conclude that the trial court erred in issuing the stay, the legal effect of which is quite unclear.[3] Presumably the court wished to avoid making Melvin and Xena "legal orphans" in the event their prospective adoptive home ultimately was found to be unsuitable, but, in proceeding as it did, the court created substantial uncertainty regarding the immediate effect and appealability of the order terminating parental rights.

We find no statutory authority to support the juvenile court's issuance of the stay of the termination order. Juvenile courts may, in their discretion, stay an order pending appellate review. For example, section 395 provides that a judgment in a proceeding under section 300 and any subsequent order

---

[3]Section 366.26, subdivision (i) provides: "Any order of the court permanently terminating parental rights under this section shall be conclusive and binding . . . . After making the order, the court shall have no power to set aside, change, or modify it, but nothing in this section shall be construed to limit the right to appeal the order." It is debatable whether an order terminating parental rights, which has been made but stayed, may be set aside or changed, whether by way of a section 388 petition alleging changed circumstances or citing new evidence, or in the event a prospective adoptive home is not approved. The efficacy of imposing a stay on a termination order to avoid creating a "legal orphan" is questionable at best.

may be stayed *pending appeal* provided that suitable provision is made for the maintenance, care, and custody of the child. (See also Cal. Rules of Court, rule 1435(c).) Code of Civil Procedure section 918, subdivision (a), provides that "the trial court may stay the enforcement of any judgment or order," however that section is located within part 2, title 13 of the code, relating to *appeals* in civil actions, and thus the stay referred to therein is a stay pending appeal. Code of Civil Procedure section 917.7, also located within title 13, relates specifically to custody orders in juvenile proceedings. It provides: "The perfecting of an appeal shall not stay proceedings as to those provisions of a judgment or order which award, change, or otherwise affect the custody, including the right of visitation, of a minor child . . . in an action filed under the Juvenile Court Law . . . . However, the trial court may in its discretion stay execution of these provisions pending review on appeal or for any other period or periods that it may deem appropriate. . . ." These statutes do not authorize the stay imposed here, where no appeal was pending; the stay was to accommodate the preparation of an adoptive home study.

We conclude that the trial court abused its discretion by staying the order terminating parental rights, thus delaying an appeal from that order and consideration of the petition for adoption. (§ 366.26, subd. (j) [no petition for adoption may be granted until the appellate rights of the natural parents have been exhausted].) Once the court proceeded with the section 366.26 hearing and issued an order terminating appellant's parental rights, any sense of urgency to complete the adoptive home study apparently faded, and the case languished for eight months. Appellant's opportunity to promptly appeal the order terminating parental rights was thwarted, as was the legislative mandate that dependency matters proceed expeditiously.

We have found no precedent in the case law involving a similar situation which addresses the issue of whether or not a stayed order terminating parental rights is immediately appealable. In the face of the uncertainty created by the stay under the circumstances present here, we cannot construe the notice of appeal, filed three days after the stay was lifted, to be untimely as to the order terminating parental rights, as respondent seems to suggest.

Having found the court's issuance of a stay of the order terminating appellant's parental rights to be error, we next consider whether the error resulted in prejudice to appellant. As respondent points out, at no time did appellant object below to the court's stay of the order, despite having eight months to do so before the stay was lifted. Appellant arguably waived any error by failing to raise it below. (*In re Christopher B.* (1996) 43 Cal.App.4th

551, 558 [51 Cal.Rptr.2d 43]; *In re Richard H.* (1991) 234 Cal.App.3d 1351, 1362 [285 Cal.Rptr. 917].) However, we will consider the merits of appellant's claim if only to forestall any claim of ineffective assistance of counsel for failing to argue the issue. (See *Deborah S. v. Superior Court* (1996) 43 Cal.App.4th 741, 748, fn. 5 [50 Cal.Rptr.2d 858].)

We readily conclude that the juvenile court's error in staying the order terminating parental rights was harmless. Appellant contends she was prejudiced by the delay because she was no longer permitted to visit her children and "was subject to losing the closeness of her relationship" with them. As we next discuss, the loss of contact was not due to the delay caused by the stay, but rather was the result of the order discontinuing visitation—which order was not stayed and was immediately appealable.

## II. *The Order Discontinuing Visitation Was Separately Appealable, and the Appeal from That Order Is Untimely*

■ The order discontinuing visitation was a separate order from which appellant could have and should have appealed immediately after it was entered in February 1999, rather than waiting until the stay from the order terminating her parental rights was lifted.

"Section 395 provides in pertinent part: 'A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, *and any subsequent order may be appealed from as an order after judgment* . . . .' [Fn. omitted.] In a section 300 proceeding, the order entered at the dispositional hearing is a final judgment, and any order entered after the dispositional hearing (with one. exception not pertinent here) is appealable as an order after judgment. (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 34 [49 Cal.Rptr.2d 332]; *Wanda B. v. Superior Court* (1996) 41 Cal.App.4th 1391, 1395 [49 Cal.Rptr.2d 175]; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 196 [23 Cal.Rptr.2d 482] ['[T]he dispositional order is the adjudication of dependency and is the first appealable order in the dependency process.'].) The notice of appeal must be filed within 60 days after the juvenile court makes a final appealable order. (Cal. Rules of Court, rule 1435(f).)" (*In re Daniel K.* (1998) 61 Cal.App.4th 661, 666-667 [71 Cal.Rptr.2d 764].)

Here, the statutory time for filing an appeal from the February 1999 order discontinuing visitation had passed long before the notice of appeal was filed in October 1999. Thus, we must dismiss the appeal to the extent it purports to challenge the visitation order.

" '[T]he Juvenile Court Law . . . contains a specific provision for appeals . . . . Accordingly, under the rule that a special statute dealing expressly with a particular subject controls and takes priority over a general statute [citations], section [395], and not Code of Civil Procedure section [904], is the one which must be looked to with respect to appeals under the Juvenile Court Law.' (*In re Corey* (1964) 230 Cal.App.2d 813, 821 [41 Cal.Rptr. 379] [decided under former section 800, which applies to juvenile proceedings under sections 601 and 602 . . .]; see also *In re Eli F.* (1989) 212 Cal.App.3d 228, 233 [260 Cal.Rptr. 453].)" (*In re Daniel K., supra,* 61 Cal.App.4th 661, 668.)

" 'Juvenile dependency law does not abide by the normal prohibition against interlocutory appeals. [Citation.] As previously noted, *all* postdispositional orders in juvenile dependency matters are directly appealable *without limitation,* except for post-1994 orders setting a section 366.26 hearing.' (*In re Edward H.* [(1996)] 43 Cal.App.4th 584, 590 [50 Cal.Rptr.2d 745], italics added.)" (*In re Daniel K., supra,* 61 Cal.App.4th 661, 668.)

The order discontinuing visitation was clearly separate and apart from the order terminating appellant's parental rights. It went into effect immediately as of the February 1999 hearing, and was not part of the order terminating parental rights which the juvenile court stayed. While the visitation order followed and could be said to be a result of the order terminating parental rights, the court could also have ordered continued visitation; the order regarding visitation was not part and parcel of the order terminating parental rights.

III. *The Orders Denying Substitution of Counsel and a Continuance Were Separately Appealable, and the Appeal from Those Orders Is Untimely*

▮ As to other claims of error that appellant raises, we reach the same conclusion. Appellant contends the trial court erred in denying her counsel's request to be relieved as counsel, and in denying her counsel's request for a continuance to speak to appellant (who had been given notice of the hearing but was not present) before proceeding with the section 366.26 hearing. The orders entered by the juvenile court in this regard were separate and apart from the stayed order terminating parental rights. The court's denial of substitution of counsel and a continuance did mean that the court proceeded to immediately hold the section 366.26 hearing, but the prior orders clearly were separate from the order terminating parental rights. Appellant's purported appeal from those orders is dismissed.

Appellant urges that we should not encourage parties to bring piecemeal appeals from the numerous orders entered in juvenile dependency proceedings. While we do seek to maximize judicial efficiency, we also must emphasize the paramount importance of seeking timely review of juvenile court orders in order to allow cases to proceed expeditiously. Counsel must remain vigilant to bring appealable orders to the attention of the appellate courts in a timely manner.

## IV. *Appellant Has Failed to Demonstrate Error Regarding the Order Terminating Parental Rights*

Appellant raises various contentions regarding the order terminating her parental rights to Melvin and Xena. ■ She contends the juvenile court should have, sua sponte, considered the exception to terminating parental rights found in section 366.26, subdivision (c)(1)(A) given the strong emotional bond she shares with her children. We reject this argument. The parent has the burden of proving that termination would be detrimental to the child. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350 [93 Cal.Rptr.2d 644] and cases cited therein; Cal. Rules of Court, rule 1463(d)(1), (3).) Appellant's counsel made no attempt to argue the applicability of the (c)(1)(A) exception at the section 366.26 hearing.

Appellant also contends she was denied her statutory right to effective assistance of counsel because Mr. Osias was not prepared to proceed with the hearing, as evidenced by his failure to argue that the section 366.26, subdivision (c)(1)(A) exception applied. Although appellant arguably waived this argument by failing to raise it below, we will consider the merits of the claim, if only to demonstrate that substituted counsel was not ineffective for failing to address the issue of prior counsel's performance.

"A parent seeking review of a claimed violation of section 317.5[4] must show a violation of the statute, i.e., that counsel failed to act in a manner to be expected of reasonably competent attorneys practicing in the field of juvenile dependency law. Courts are not unfamiliar with this test. [Citations.] [¶] The parent must also establish that the claimed error was prejudicial. We agree with those cases holding that violation of a statutory right to counsel is properly reviewed under the harmless error test enunciated in *People* v. *Watson* [(1956)] 46 Cal.2d 818, 836 [299 P.2d 243]. (*In re Justin L.* (1987) 188 Cal.App.3d 1068, 1077 [233 Cal.Rptr. 632] [concerning

---

[4]Section 317.5, subdivision (a) provides: "All parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel."

statutory right to self-representation]; *In re Nalani C.* [(1988)] 199 Cal.App.3d 1017 [245 Cal.Rptr. 264]; *In re Ronald R.* [(1995)] 37 Cal.App.4th 1186 [44 Cal.Rptr.2d 22]; *In re Malcolm D.* (1996) 42 Cal.App.4th 904, 919 [50 Cal.Rptr.2d 148].) Thus the parent must demonstrate that it is 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.)" (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1667-1668 [54 Cal.Rptr.2d 722].)

Even if we assume that counsel failed to act in a manner to be expected of reasonably competent attorneys practicing in the field of juvenile dependency law by failing to argue the section 366.26, subdivision (c)(1)(A) exception, appellant has not demonstrated that a result more favorable to her would have been reached in the absence of the error. Section 366.26, subdivision (c)(1)(A) provides: "(c)(1) If the court determines, . . . by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. . . . A finding under . . . Section 366.21 or 366.22, that the court has continued to remove the child from the custody of the parent or guardian and has terminated reunification services, shall constitute a sufficient basis for termination of parental rights unless the court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (A) The parents or guardians have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

"Although the kind of parent/child relationship which must exist in order to trigger the application of section 366.26, subdivision (c)(1)(A) is not defined in the statute, it must be sufficiently strong that the child would suffer detriment from its termination." (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418 [35 Cal.Rptr.2d 162].) " 'In the context of the dependency scheme prescribed by the Legislature, we interpret the "benefit from continuing the [parent/child] relationship" exception to mean the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are

not terminated.' (*In re Autumn H.* [(1994)] 27 Cal.App.4th 567, 575 [32 Cal.Rptr.2d 535].)" (*In re Beatrice M., supra,* 29 Cal.App.4th at p. 1418; see also *In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1155 [94 Cal.Rptr.2d 693].)

The record before us indicates that Melvin and Xena were detained in February 1997, but appellant did not begin visiting them until August 1997. From August 1997 until May 1998, appellant visited the children 15 times, although the court's order was for weekly monitored visitation. After the court terminated reunification services in October 1998, appellant had no more contact with the children for the ensuing four months leading up to the section 366.26 hearing in February 1999.

Appellant points out that a social worker from the children's bureau reported in August 1998 that appellant acted appropriately during visits with the children. The social worker stated: "Maria is child-orientated [*sic*] and engages easily in play with the kids. In her expressions it is evident that she cares much for her children . . . ." The social worker also noted: "Melvin and Xena are very attached to, and bonded with Maria. Both express extreme feelings of excitement upon arriving to a visit and seeing their mother, and also displaying sadness and fear of leaving their mother upon termination."

The exception referred to in section 366.26, subdivision (c)(1)(A) " 'applies only where the court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent.' (*In re Autumn H., supra,* 27 Cal.App.4th at p. 575.)" (*In re Beatrice M., supra,* 29 Cal.App.4th at p. 1419.) Although the social worker's report in August 1998 was positive, the record demonstrates that regular visits and contact did not occur between appellant and the children for substantial periods of time, including the four months preceding the section 366.26 hearing. The February 1999 social worker's report stated that Melvin, four years old, and Xena, three years old, are very attached to their paternal grandmother, with whom they live and who is seeking to adopt them, and they are receiving excellent care. Both children said they are very happy in the home and do not wish to be anywhere else.

Based on the evidence presented in the record, we conclude that even if her counsel had raised and fully argued the exception set forth in section 366.26, subdivision (c)(1)(A), a result more favorable to appellant would not have been reached. Appellant's parental rights were properly terminated.

## Disposition

The appeal from the orders discontinuing visitation, denying substitution of counsel, and denying a continuance is dismissed as untimely.

The order terminating parental rights is affirmed.

Epstein, J., and Hastings, J., concurred.