Filed 5/16/23  In re Marilyn H. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re Marilyn H., a Person Coming Under the Juvenile Court Law. | B321485 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 19CCJP02633A |
| Plaintiff and Respondent, | |
| v. | |
| KARINA H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge. Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

This is Karina H.'s (mother) third appeal in dependency proceedings involving her six-year-old daughter Marilyn. In the first appeal, we affirmed the juvenile court's jurisdiction findings and disposition order declaring Marilyn a dependent of the court and removing the child from mother's custody due in part to mother's mental health issues. (*In re Marilyn H.* (Nov. 17, 2020, B302057) [nonpub. opn.] (*Marilyn I*).) In the second appeal, we affirmed the court's findings and order terminating mother's reunification services. (*In re Marilyn H.* (July 22, 2021, B308251) [nonpub. opn.] (*Marilyn II*).) In this appeal, mother argues that the court committed reversible error by failing to allow mother to tell the court why she wished to replace her court-appointed counsel with private counsel at her Welfare and Institutions Code[1] section 366.26 hearing (the .26 hearing). Mother suggests this was tantamount to denying a request for a *Marsden*[2] hearing. Because mother was free to engage private counsel at any time, no *Marsden* hearing was required. We also perceive no abuse of discretion in the court's denial of mother's request for a continuance of the .26 hearing, made on the date of the hearing, which had already been continued several months. Finally, mother identifies no prejudice caused by either purported error. We therefore affirm.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In October 2019, the court sustained a dependency petition filed on Marilyn's behalf by the Department of Children and Family Services (Department), which alleged: (1) mother's mental health and emotional problems, including a diagnosis for "major depression recurrent with psychotic symptoms," and her failure to take prescribed psychotropic medication, placed the child at risk of serious physical harm (§ 300, subd. (b); b-1 allegation); (2) John M.'s (father) history of substance abuse rendered him incapable of providing regular care to the child, and his drug use and mother's failure to protect Marilyn from that drug use place the child at serious risk of physical harm (§ 300, subd. (b); b-2 allegation); and (3) mother's mental health issues, which caused Marilyn's sibling to be declared a dependent of the court, placed Marilyn at serious risk of physical harm (§ 300, subd. (j); j-1 allegation). The court declared Marilyn a dependent of the court and ordered her removed from her parents' custody.

The court awarded mother and father reunification services. The court ordered mother to: complete a parenting program and mental health counseling; undergo psychological and psychiatric evaluations; participate in individual counseling addressing her history of mental health issues and how to properly care for Marilyn; and take all prescribed psychotropic medications. The court also ordered mother to submit to 10

---

[3] A detailed summary of the factual background leading up to the jurisdiction and disposition hearing appears in *Marilyn I.* A detailed summary of the factual background of the case between the jurisdiction and disposition hearing and the termination of mother's family reunification services appears in *Marilyn II.*

random drug tests to show her "marijuana levels" have decreased. The court awarded mother three hours of visitation per week.

Mother appealed from the disposition order.[4] We affirmed the court's jurisdiction findings and disposition order in *Marilyn I.*

Mother made progress in completing her court-ordered case plan during the first several months of the review period. Mother's drug tests showed a steady drop in the concentration of marijuana metabolites in mother's system. Mother continued her psychiatric treatment at Tri-City Mental Health Services (Tri-City), where she was receiving services leading up to the jurisdiction and disposition hearing. Mother was also seeing a new therapist. Through late March 2020, mother visited Marilyn twice a week for about two hours each visit. Mother brought food and activities for Marilyn, and the child usually appeared happy to see her.

However, Mother stopped visiting or otherwise contacting Marilyn around April 2020 and stopped contacting her therapist around the same time. Between April and July 2020, the social worker spoke to mother on only one occasion, during which mother's behavior was belligerent and erratic. In late July 2020, the social worker spoke to mother's psychiatrist at Tri-City. Mother occasionally "pop[ped] in for services," but she had not

---

[4] Father also appealed this order, but his court-appointed appellate counsel filed a no-merit brief under *In re Phoenix H.* (2009) 47 Cal.4th 835. We dismissed father's appeal in August 2020. Father is not a party to the instant appeal.

consented to the psychiatrist releasing details of her treatment to the Department.

In late September 2020, mother contacted the Department. She provided her new address and asked for video or telephonic visits with Marilyn, which the social worker agreed to arrange. Mother claimed she completed her services at Tri-City, was working to arrange additional services near her new home, and was still taking medication. But the Department had yet to receive psychological or psychiatric evaluations for mother or proof that she had enrolled in or completed mental health and individual counseling.

In October 2020, after several continuances, the court held a review hearing under section 366.21, subdivision (e). The court found mother and father were in partial compliance with their case plans and had made minimal progress toward alleviating the issues leading to Marilyn's dependency. The court found it would be detrimental to Marilyn's health and safety to return the child to her parents' custody. The court terminated mother's reunification services but continued father's services because he had only recently been released from prison.

Mother appealed from the order terminating reunification services. We affirmed the court's findings and order in *Marilyn II*.

The court set a further status hearing for April 2021. In a report filed before the hearing, the Department noted that Marilyn had bonded well with her caretakers, with whom she had been placed in April 2020, and was doing well. Mother had not participated in visitation with Marilyn during the reporting period. Father had not had any visits with Marilyn since August 2020. He had also failed to enroll in a drug and alcohol program and to participate in drug testing, as the court had ordered. The

5

Department therefore recommended that father's reunification services be terminated.

The court concluded that notice of the hearing had not been properly given to mother and continued the hearing to May 2021. In a last minute information filed with the court, the Department reported that mother had not made contact with the social worker since March 2021. The last time mother had called Marilyn they spoke for only five minutes, as Marilyn got bored and did not wish to engage with mother. At the hearing, the court terminated family reunification services for father and set a section .26 hearing for September 2021.

The Department filed its section .26 report in September 2021. According to one of the child's caretakers, mother participated in twice-weekly telephonic visitations with Marilyn, but did not always call. When she did, she would not allow Marilyn to speak, and the calls were no more than five minutes because Marilyn did not want to stay on the phone. Marilyn would sometimes grow upset and give the phone to the caretaker. Father had not contacted Marilyn since August 2020. A social worker reported that Marilyn appeared happy in her current home. Her caretakers had demonstrated a commitment to her, as evidenced by their desire to move forward with adoption as soon as possible. The Department identified adoption as the most appropriate plan for Marilyn. The social worker had obtained mother's agreement to be served with notice of the .26 hearing by email, but requested a 120-day continuance to complete a due diligence search for father.

The court found that notice of the section .26 hearing had not been given as required by law and continued the .26 hearing to January 2022. In a November 2021 status report, the

Department noted that mother called Marilyn twice a week, but her calls were inconsistent and lasted approximately five minutes because Marilyn did not want to speak with mother. Marilyn had been exhibiting tantrum behaviors triggered by mother's monitored phone calls. According to the prospective adoptive parents, Marilyn would become upset, verbalize that she did not want to be on the phone, hide the phone, throw the phone, and pinch the prospective adoptive parents. She also questioned who her mother was. The Department submitted a mental health referral for Marilyn. Father had not contacted Marilyn during the reporting period. Marilyn continued to be placed with the prospective adoptive parents and the Department believed that adoption continued to be an appropriate plan. Marilyn was happy, healthy, and thriving in the prospective adoptive parents' home and had a bond with them.

In January 2022, the Department informed the court that it had served mother with notice of the .26 hearing via certified mail, but its due diligence search for father was still pending. The Department requested a further continuance of the .26 hearing. The court found that notice had been proper as to mother and granted the continuance. The Department located father in March 2022 and the .26 hearing was scheduled for June 2022.

The Department filed a further status report in May 2022. Marilyn continued to reside with her prospective adoptive parents and had formed a strong attachment to them. She referred to them as "mom" and "dad." Marilyn was receiving mental health services to improve her emotional regulation and expression of feelings. Her mental health care provider reported that Marilyn's prospective adoptive parent "does well to soothe and manage [child's] symptoms when client [child] is

7

dysregulated." Mother's telephonic and video visits with Marilyn were inconsistent. Mother sent the social worker crafts, activities, and gifts for Marilyn, which the social worker provided to Marilyn. Mother also attempted to read books to Marilyn, sing songs, and ask appropriate questions. However, the calls still lasted no more than five minutes. Marilyn continued to express that she did not want to speak with mother and would run off camera or hang up the call. Father had twice weekly telephonic calls with Marilyn and began video calls with her in April 2022. However, the first video call lasted less than one minute as Marilyn did not wish to speak with father.

In a last-minute information filed in June 2022, the Department reported that mother had not participated in telephonic visits with Marilyn for three to four months because she did not have a phone. Her video visits had been inconsistent for the past three months and, when they took place, lasted only two to five minutes. Marilyn indicated that she did not want to speak with mother and ran off camera. Although the caretaker tried to redirect Marilyn back on camera, Marilyn would yell, as she did not want to talk. Marilyn's calls with father were also inconsistent and Marilyn verbalized that she did not want to speak to him.

At the .26 hearing on June 14, 2022, the court stated its understanding that a continuance would be requested so mother could pursue private counsel. Mother's counsel stated: "Yes, your Honor. [¶] Mother informs me this morning that she wishes to seek private counsel to represent her in this hearing. It is her request today for a continuance." Mother's counsel did not have a recommendation regarding the length of the continuance. Counsel for father did not object to the request, but Marilyn's

counsel objected on the grounds that mother "has had ample opportunity over the years to seek private counsel." Counsel for the Department joined in the arguments of Marilyn's counsel and pointed out that notice of the .26 hearing had been proper as to mother since January 2022.

Mother attempted to speak, but the court muted her. The court recognized that mother may have thoughts she wished to share but asked that she wait to be called upon. The court stated that it was of the view that there was not good cause for a continuance because it would not be in the best interests of the child and proceeded with the .26 hearing. Counsel for mother informed the court that mother objected to the Department's recommendation and asked the court not to terminate her parental rights under the parental bond exception, citing mother's phone visits with Marilyn. Mother's counsel advised the court that mother wished to pursue a different permanent plan and asked that the court note her objection, which it did. Counsel for father also objected to the termination of parental rights, but acknowledged that the parental bond exception did not apply to father. Marilyn's counsel and counsel for the Department argued that parental rights should be terminated because the parental bond exception did not apply and Marilyn was adoptable.

The court concluded that the parental bond exception did not apply as to mother and terminated parental rights for mother and father. It reiterated that there was no good cause for a continuance based on the evidence presented. The court concluded that jurisdiction and placement were still necessary and appropriate. It found by a preponderance of the evidence that Marilyn's return to the parents would be detrimental and found, by clear and convincing evidence, that Marilyn was adoptable.

The court advised mother and father of their right to appeal. The court thanked mother for her appearance but at no point called on her to speak.

Mother timely appealed.

## DISCUSSION

Mother argues that the court committed reversible error by not permitting her to speak at the .26 hearing to explain the grounds for her request for a continuance to retain private counsel. Mother argues that, in preventing her from speaking at the hearing, the court erroneously denied her a *Marsden* hearing. Mother also argues that the court erred in not allowing her the opportunity to explain how long of a continuance she wanted and the basis for the request. She contends that she could not present affirmative evidence that a continuance was justified because she was not permitted to speak. Mother does not challenge the substance of the order terminating her parental rights.

The denial of a *Marsden* hearing and denial of a continuance are both reviewed for abuse of discretion. (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1085 [denial of *Marsden* motion]; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 605 [denial of request for continuance].) Whether we view mother's appeal as challenging the denial of the continuance or the denial of a *Marsden* hearing, or both, we conclude that the court did not abuse its discretion. Moreover, mother fails to identify any prejudice arising from either purported error.

1. **The court did not abuse its discretion in denying mother a *Marsden* hearing.**

The legal principles governing requests for a *Marsden* hearing are settled. " ' "When a defendant seeks to discharge his

10

appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] . . . ." [Citations.]' [Citations.]" (*People v. Lara* (2001) 86 Cal.App.4th 139, 150.) A *Marsden* hearing is only required, however, "when [the] defendant requests substitution of appointed counsel[,]" and " 'when the defendant asserts directly or by implication that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel.' [Citations.]" (*Id.* at pp. 150–151.) These principles have also been applied in juvenile dependency proceedings. (See *In re V.V.* (2010) 188 Cal.App.4th 392, 398.)

*Marsden* "involved the substitution of *appointed* counsel for another *appointed* counsel," and "[t]he standards for evaluating such requests are quite different than those used in the retained counsel context." (*People v. Courts* (1985) 37 Cal.3d 784, 795, fn. 9.) In other words, "[t]he procedure specified by *Marsden* for discharging appointed counsel and appointing new counsel for an indigent defendant is inapplicable to retained counsel." (*In re V.V.*, *supra*, 188 Cal.App.4th at p. 398.) In *In re Giovanni F.*, *supra*, 184 Cal.App.4th at page 604, the court held that a father's request for a continuance so that he could attempt to retain a new attorney was not sufficient to require the court to hold a *Marsden* hearing.

Mother cites no authority for the proposition that a client who announces her intention to discharge appointed counsel and retain private counsel thereby obtains a right to a *Marsden* hearing. Mother did not need a *Marsden* hearing to hire private counsel; she was free to do so at any time. Thus, the court did not

11

abuse its discretion in failing to allow mother to explain her request for a continuance to retain private counsel.[5]

2.     **The court did not abuse its discretion in denying mother's request for a continuance.**

Pursuant to section 352, subdivision (a), the juvenile court "may continue any hearing . . . beyond the time limit within which the hearing is otherwise required to be held[.]" "Continuances shall be granted only upon a showing of good cause" and if it would not be "contrary to the interest of the minor." (*Id.*, subd. (a)(1) & (2).) "In order to obtain a motion for a continuance of the hearing, written notice shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance." (*Id.*, subd. (a)(3).) Continuances are discouraged in dependency cases. (*In re Giovanni F.*, *supra*, 184 Cal.App.4th at p. 604.)

To the extent mother argues that she has good cause for a continuance because she was entitled to a *Marsden* hearing, we disagree for the reasons set forth above. (See *In re Giovanni F.*, *supra*, 184 Cal.App.4th at p. 604.)

Further, although we do not know what explanation mother might have offered for her belated request for a continuance, the court did not act beyond the bounds of reason in concluding that no explanation could establish good cause for a

_____

[5] Because we conclude that mother had no right to a *Marsden* hearing, we do not reach the Department's contention that mother forfeited her claim of ineffective assistance of counsel by failing to raise it via a petition for writ of habeas corpus.

further delay of proceedings. The .26 hearing was originally set for September 2021. Mother was informed by a social worker of the hearing and agreed to email service of notice of the September hearing date. Thus, she was aware that a hearing would take place at which her parental rights could be terminated almost nine months before it ultimately occurred. Even if we disregard evidence indicating that mother knew of the .26 hearing as of September 2021, mother had approximately five months from the time she was properly noticed in January 2022 and the hearing took place in June 2022 in which to retain counsel. At no point prior to the hearing did mother inform her court-appointed counsel that she intended to hire a private attorney. Had she done so, her counsel could have filed a written notice requesting a continuance and setting forth any issues mother was facing in retaining counsel, pursuant to section 352, subdivision (a)(3). Rather, mother waited until the day of the continued .26 hearing to inform her current attorney and the court that she wanted to retain counsel. The court could reasonably conclude that this was an improper attempt to stall proceedings.

The court also acted within its discretion in deciding that mother's request for a continuance to retain counsel would unreasonably delay the proceedings to Marilyn's detriment. By the time of the .26 hearing, Marilyn had been in foster care for over three years, since April 2019. Evidence that Marilyn acted out when she was required to speak with mother and questioned who her mother was suggests that she was anxious about the uncertainty of her situation. Thus, the court reasonably concluded that further delay of the hearing would have interfered with Marilyn's need for prompt resolution of her custody status

13

and her right to a permanent placement. (*In re Ninfa S.* (1998) 62 Cal.App.4th 808, 811.)

3.     **Mother has failed to show that the denial of a *Marsden* hearing or denial of the request for a continuance prejudiced her.**

Even if the court erred in denying mother's request to continue the .26 hearing and by failing to hold a *Marsden* hearing, mother has failed to address the issue of prejudice. It is not enough to show error to obtain reversal. Mother was required to show that the outcome would have been different if the continuance had been granted and she was able to retain new counsel. (See Cal. Const., art. VI, § 13; *In re M.P.* (2013) 217 Cal.App.4th 441, 460 [failure to conduct a *Marsden*-type hearing is not reversible error in dependency cases absent a showing of prejudice]; *In re Emily D.* (2015) 234 Cal.App.4th 438, 449 [applying harmless error standard to denial of request for a continuance].)[6]

The issues before the juvenile court at the .26 hearing were whether any exception to termination of parental rights applied and whether Marilyn was adoptable. Regardless of who

---

[6] Mother relies solely on *Marsden* for the proposition that she "may succeed without challenging Marilyn's adoptability, or showing the strength of the parent-child bond." However, mother does not address *In re M.P.*, *supra*, 217 Cal.App.4th 441 or cite any cases supporting that failure to hold a *Marsden*-type hearing is per se reversible error in the dependency context. Our review of dependency cases supports that, even if a *Marsden* hearing had been required, mother was required to demonstrate that the error in denying the hearing was prejudicial. (See *Id*. at p. 460; *In re Ronald R.* (1995) 37 Cal.App.4th 1186, 1197.)

represented mother or whether she obtained a continuance, the evidence on these issues was settled.

To demonstrate the applicability of the parental-benefit or parental bond exception under section 366.26, subdivision (c)(1)(B)(i), the parent must prove, "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would benefit the child such that (3) the termination of parental rights would be *detrimental* to the child." (*In re Caden C.* (2021) 11 Cal.5th 614, 631.) Mother fails to cite any evidence indicating that this exception applies, and evidence that it does not apply is substantial. Although mother visited Marilyn regularly through March 2020, she did not contact Marilyn between April 2020 and February 2021, and her participation in telephonic and video visitation with Marilyn was often inconsistent between November 2021 and the .26 hearing in June 2022. Reports submitted by the Department between April 2021 and the .26 hearing indicate that calls between mother and Marilyn lasted less than five minutes and that Marilyn consistently expressed that she did not want to speak with mother, even when mother ceased to speak over Marilyn and tried to engage her attention with stories, songs, and activities. In September 2021, Marilyn's caretaker reported that she grew upset and acted out in response to calls from mother. Marilyn continued to respond negatively to calls with mother through May 2022, when a social worker reported that Marilyn would run off camera during virtual visits with mother and yell because she did not wish to participate. In sum, mother does not identify, nor do we perceive in the record, evidence of a "a substantial, positive, emotional attachment" between Marilyn and mother. (*Caden C.*, at p. 633.)

Further, Marilyn was adoptable, as evidenced by the fact that her foster parents wanted to adopt her. (See *In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1650 ["a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time"].) By the time the .26 hearing finally took place, Marilyn had spent two full years of her young life with the prospective adoptive parents. She was happy and thriving in their home and called them "mom" and "dad." The evidence showed that the prospective adoptive parents were committed to the adoption process and making Marilyn a permanent member of their family.

Thus, we perceive no prejudice resulting from the court's denial of a *Marsden* hearing or the denial of mother's request for a continuance to retain counsel.

## DISPOSITION

The court's findings and order terminating mother's parental rights are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.