[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1418 
OPINION
This is an appeal in a dependency case. What started out as a scheduled settlement conference ended up as jurisdictional and dispositional hearings when mother failed to appear. She was not informed of the consequences of such a failure, nor was she permitted, through counsel, to cross-examine the social workers who prepared the fact sheets for the dependency petition. These were appended to the social study of a worker who entered the case post petition. On this worker's testimony and her report, the court declared the minor a dependent and ordered out-of-home placement.
We conclude that appellant was not afforded due process and that this constitutional violation cannot be deemed as harmless beyond a reasonable doubt. Accordingly, we reverse the dispositional and jurisdictional orders.
 I. FACTS
Stacy T. was born March 3, 1995. Both the infant and his 17-year-old mother, Patrice K. (appellant), tested positive for cocaine. As well, hospital staff reported that appellant "smelled of alcohol" at the time of delivery. According to staff, appellant had tested positive for cocaine on her only two predelivery visits. Both appellant and father admitted cocaine addiction to a hospital social worker, who referred them to respondent San Francisco Department of Social Services (Department) with the idea that the family would be amenable to voluntary services.[1] *Page 1419 
On April 26 the parents met with child welfare worker Marc Lipschutz. They admitted to drug use, and Lipschutz gave them referrals to a drug treatment program. At that time the parents told Lipschutz they would be moving to an undetermined address in two days and would notify him of their whereabouts.
Things started to go downhill. The parents did not notify the Department of their whereabouts until May 16. Appellant failed to keep Stacy's medical appointment or to honor several scheduled home visits. The public health nurse decided to close the case because "the family was uncooperative and had unknown whereabouts."
However, appellant reestablished contact and was referred again for treatment and to a new public health nurse. But again, she failed to show up for intake, failed to keep Stacy's medical appointment and failed to keep an office visit.
Lipschutz "serendipitously discovered" appellant and child at an address other than the one she had provided. He scheduled a visit and gave appellant a bus pass. She failed to appear and telephoned the next day to say she was without fare.
On August 17 a police inspector reported to the Department that the father punched appellant while she was holding Stacy and hit the baby. The father refused to let appellant take the baby; appellant fled. The baby was left with appellant's 12-year-old sister. After father's arrest, appellant picked Stacy up and left with the baby when notified of Lipschutz's pending arrival. She later contacted Lipshutz and reported that Stacy had not yet received medical attention. Appellant did not make the baby available for examination, her whereabouts became unknown again and, thereafter, a warrant issued for the minor.
Meanwhile, Lipschutz determined the parents had failed to honor their voluntary agreement, and he prepared a fact statement supporting the Department's petition, which he filed on August 18th. Allegations were under section 300, subdivision (b) — minor has suffered or was at substantial risk of suffering serious physical harm or illness because of parent's inability to provide regular care due to substance abuse. In his supporting statement dated August 15, Lipschutz requested in-home dependency rather than detention. *Page 1420 
Then on October 3 the parents brought Stacy to Mt. Zion Hospital for "`symptoms of asthma.'" The parents left "`against medical advice'" before tests were performed. Two days later Stacy was admitted to the hospital with a high fever. Appellant and her mother accompanied him to the hospital. After receiving treatment for croup, he was released to shelter care based on the outstanding warrant.
On October 10 the Department filed an amended petition with an addendum to Lipschutz's statement of supporting facts. Child welfare worker Patricia Flynn prepared the amended fact sheet.[2]
Appellant was present at the detention hearing. She submitted to the detention with the understanding that the Department would agree to a right of release to her and would explore placement with a relative. The court ordered detention, with a right of release. Appellant denied the allegations in the petition and the matter was set for a first jurisdictional hearing as to the father and for a December 6 settlement conference on jurisdictional and dispositional issues as to appellant. The court ordered appellant to be present at the settlement conference.
Thereafter Zimmerer filed her social study report, appending thereto the reports prepared by Lipschutz and Flynn. Zimmerer reported that although the case plan called for regular visits with Stacy, appellant only visited him twice in foster placement, and had not visited in over a month. Additionally, although appellant completed the intake and assessment for a drug treatment program, she failed to follow through with it.
At the time of the scheduled settlement conference, the court noted that appellant (not present) had been notified that the matter would not "go" until December 20. The court rescheduled for December 27 and ordered appellant "to appear through counsel."
She did not appear on December 27. Father submitted to the allegations in the petition. The court announced it would enter appellant's default. Her attorney objected under authority of Inre Dolly D. (1995) 41 Cal.App.4th 440 *Page 1421 
[48 Cal.Rptr.2d 691], arguing appellant was entitled to confront and cross-examine the preparers of the report. Social worker Zimmerer was present and subject to cross-examination. Appellant's attorney unsuccessfully requested the opportunity to examine Lipschutz and Flynn about the circumstances surrounding the necessity to remove the child.
On direct examination Zimmerer stated she recommended against returning Stacy to his parents because "it would be unsafe for him to live with" them. She would not consider in-home dependency "because C.P.S. tried to work with the family for a number of months and was unsuccessful." The court entered appellant's default, found the allegations true and immediately proceeded to disposition, ordering Stacy to reside in a foster home. Appellant sought rehearing of the jurisdictional order and dispositional findings. This the court denied, and appellant appealed.
 II. DISCUSSION (1a) Appellant maintains that the refusal to permit cross-examination of the authors of the reports supporting the petition resulted in a denial of due process. We agree. But we are concerned as well with the further degradation of rights occasioned by the misapplication, and limitations, of the local juvenile court "default" procedures.[3] In the end, we find that these multiple violations of due process are not harmless beyond a reasonable doubt.
 A. Due Process Implications of Failing to Advise a Parent of the Consequences of Not Appearing
We begin with analysis of the local rules. Pursuant to rule 2.5 of the local rules for dependency departments of the San Francisco Superior Court (hereafter, local rules), if the parties enter a denial at the detention hearing and the need for a "J-1 hearing" has been dispensed with (by waiving time), the court sets a settlement conference and orders that the settlement conference report be available to counsel at least five calendar days before the conference. The court must order the parents' and social worker's presence at the conference, and must "specifically inform the parents/guardians that a failure to appear will result in a DEFAULT being entered." *Page 1422 
It is then counsel's responsibility to "pick up a copy of the Report and discuss it with the client before coming to the Settlement Conference." (Local rules, rule 5.2) Three things can happen at the settlement conference: If settlement is reached, it is "put on the record immediately." (Local rules, rule 5.3) If the parties do not settle, the matter is set for a trial call/readiness conference or the matter is continued for further settlement talks. (Ibid.) (2) (See fn. 4.) If the parent does not show, the court enters a "default"[4] and, as in this case, proceeds directly with the jurisdictional and dispositional hearings in the parent's absence.
Under the statute and rules, at the commencement of the jurisdictional hearing the court shall read the petition and then advise the parent, among other matters, of the right to confront and cross-examine those who prepared reports or documents submitted to the court by petitioner; the right to use the process of the court to bring forth witnesses; and the right to present evidence to the court and a right to a hearing on the issues raised by the petition. (§§ 341, 353; Cal. Rules of Court,[5] rules 1412(i), 1449(a) (b).) The court then inquires whether the parent intends to admit or deny the allegations. (Rule 1449(c).) If the parent denies the allegations the court shall proceed to a contested hearing to determine if they are true. (Rule 1450.)
Section 355 demands that jurisdictional findings must be supported with proof by a preponderance of evidence. Evidence must be legally admissible and relevant to the circumstances or acts alleged in the petition.
(3) In In re Malinda S. (1990) 51 Cal.3d 368
[272 Cal.Rptr. 787, 795 P.2d 1244], our Supreme Court held that a social study report is admissible and competent by itself to support a determination of jurisdiction. It *Page 1423 
reasoned that section 281[6] and rule 1450(c)[7] implicitly created hearsay exceptions for social studies. The court was first struck by the fact that these reports are prepared by disinterested parties in the regular course of their professional duties. Thus, for example, unlike an accident report prepared by an injured driver, social studies are marked by elements of objectivity and expertise that lend them to a higher degree of reliability and trustworthiness. (In re Malinda S., supra, at pp. 376-377.) Second, the implication of section 281 — which permits the court to consider the reports in determining custody, status and welfare issues — is that the reports could form the basis for the actual jurisdictional determination. (In reMalinda S., supra, at pp. 377-378.)
Rule 1450(c) specifically conditions admissibility on making the social worker available for cross-examination upon parental request. This is important. Due process is served so long as the parents receive a copy of the report in advance of the hearing, are given an opportunity to examine the investigating officer and subpoena and examine persons whose hearsay statements are contained in the report, and are permitted to introduce evidence by way of rebuttal. (In re Malinda S., supra, 51 Cal.3d at pp. 382-383, 385, fn. 21.)
In the recent case of In re Dolly D., supra, 41 Cal.App.4th 440, the father failed to appear, upon order to do so, at a continued mediation hearing. His counsel asked the court to set the matter for a "`default prove up'" to cross-examine the child's social worker. The court refused, proceeding instead by way of "default," based on the pretrial resolution conference report. The reviewing court held that refusal of the "prove-up" hearing amounted to denial of the father's due process right to confront and cross-examine the social worker who prepared the conference report. The court grounded its decision on In reMalinda S., supra, 51 Cal.3d 368, and rule 1412(i). (In reDolly D., supra, at pp. 444, 445.) It concluded: "The consequences of a parent's failure to appear at a scheduled hearing or conference . . . do not include the deprivation of the due process right to confront and cross-examine witnesses. . . ." (Id., at p. 446; accord, In re Nemis M. (1996) 50 Cal.App.4th 1344, 1352 [58 Cal.Rptr.2d 324].) *Page 1424 
(1b) In the case at hand, several of the procedures set forth in the rules were collapsed by the local procedures. Appellant entered a denial at the detention hearing, not the jurisdictional hearing, and the case automatically went to settlement mode rather than to a contested hearing. More importantly, contrary to the local rules, appellant was not advised at the detention hearing that a failure to appear at the settlement conference would result in her "default," let alone the consequences of a "default."
Those consequences, as it turned out, were many. With the failure to appear at the settlement conference and entry of "default," the court proceeded immediately to the jurisdictional and dispositional hearings. With the default, appellant missed her opportunity to call, confront and cross-examine witnesses, including Lipschutz and Flynn, and to present her own evidence. Moreover, with the default, she missed out on the opportunity to be advised that she had these and other rights in the first instance and would be foregoing them by failing to appear at the settlement conference. This is the catch-22 of the local settlement conference-default scheme, as played out in this case.
A parent's fundamental right to adequate notice and the opportunity to be heard in dependency matters involving potential deprivation of the parental interest (In re B.G. (1974)11 Cal.3d 679, 688, 689 [114 Cal.Rptr. 444, 523 P.2d 244]) has little, if any, value unless the parent is advised of thenature of the hearing giving rise to that opportunity, including what will be decided therein. Only with adequate advisement can one choose to appear or not, to prepare or not, and to defend or not.
B. Appellant's Right of Confrontation Includes the Right to Cross-examine the Authors of Social Studies Submitted in Support of Jurisdiction (4) Finally, appellant did not regain due process inabsentia by being represented at the settlement conference. Her attorney faithfully attempted to preserve her Dolly D. rights by seeking to cross-examine Lipschutz and Flynn, the preparers of the fact sheets in support of the petition and amended petition. Counsel was willing to schedule a hearing for that purpose. Zimmerer, the only social worker present and the preparer of the settlement conference report, was not involved in the events described in these fact sheets. Indeed, she had been on vacation at the time Flynn filed the second report. These documents contained the facts supporting the specific *Page 1425 
allegations in the petition, including the crucial facts leading up to the decision to remove Stacy from appellant's care.
These fact sheets are social worker reports within the meaning of section 281.[8] They are reports prepared by the social workers assigned to the minor at the pertinent times. They are "written reports and written recommendations" concerning the custody, status and welfare of a minor, made after "investigation of the appropriate facts and circumstances," (§ 281.) They contained "information relevant to the jurisdiction hearing." (Rule 1450(c).) Additionally, they are reports that the court received and considered at the detention and jurisdictional hearings.
Moreover, the fact sheets do not lose their status as social worker reports simply because social worker Zimmerer incorporated them into her settlement conference report. With respect to the jurisdictional fact sheets of Lipschutz and Flynn, she was just an envelope with a return address, delivering the reports of others.
From this we conclude that appellant had a right, on request, to have them "made available to be cross-examined on the contents of the report[s]." (Rule 1450(c).) This request, made through her attorney, was wrongfully denied.
We further clarify that by submitting to the detention, with a right to release, appellant did not submit the jurisdictional determination; as to that she entered a denial. The Department seems to suggest that because appellant did not seek to question Lipschutz and Flynn at the detention hearing, she forfeited the opportunity to question them later at the jurisdictional and dispositional hearings. This proposition is unsound because the interests at stake at the two hearings are not comparable. The interest at stake at detention is a very temporary loss of custody, and here it was clear that everyone envisioned release to appellant upon enrollment in residential treatment. From the parent's point of view the interest at stake at the jurisdictional and dispositional hearings is much greater. Hence, the motivation to question the authors of the reports who conducted the investigation and gathered the information supporting the jurisdictional allegations would also be much greater. *Page 1426 
 C. Conclusion; Prejudice
Appellant suffered multiple invasions of her right to due process. The court did not tell her that failure to appear at the settlement conference would result in her "default" Nor did it tell her of the serious consequences that could flow from such "default." As a consequence, she was never advised of the very important rights she was waiving by not appearing at the settlement conference. Then, the court compounded the situation by depriving her, through counsel, of the opportunity to cross-examine the very social workers who prepared the reports in support of the jurisdictional facts in the petition.
Was this accrued degradation of her due process right harmless beyond a reasonable doubt? (In re Amy M. (1991) 232 Cal.App.3d 849, 867-868 [283 Cal.Rptr. 788]; In re Nemis M., supra,
50 Cal.App.4th at p. 1355; In re Dolly D., supra, 41 Cal.App.4th at p. 446.)[9]
No. First, we have to consider the possibility that had appellant known that in fact the settlement conference would accelerate into the jurisdictional and dispositional hearings, she would have appeared. Then, we have to consider that she might have testified on her own behalf. We cannot speculate as to the substance or effect of such testimony except that it would have to bear on issues before the court: whether she was unable to provide regular care for Stacy due to substance abuse (§ 300, subd. (b)); her amenability to home supervision in lieu of dependency adjudication (§§ 301, 360, subd. (b)); her attempts, if any, to ameliorate the conditions leading to dependency; the existence of reasonable means to protect the minor without removing him from appellant's custody (§ 361, subd. (b)(1)); and whether reasonable efforts were made to prevent or eliminate the need for removal (§ 361, subd. (c)).
Similarly, questioning of the authors of the jurisdictional fact sheets could explore why a right of release had been recommended earlier, and the type and extent of preplacement services offered. These were the issues counsel wanted to explore but was not permitted to do so. *Page 1427 
On this record the violations were substantial and not harmless beyond a reasonable doubt. We reverse the jurisdictional and dispositional orders and remand for further proceedings.
Poche, J., and Reardon, J., concurred.
[1] Section 301 of the Welfare and Institutions Code authorizes a voluntary program of supervision in lieu of filing a petition.
Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.
[2] With the lodging of the petition, Stacy's case had been transferred from voluntary services to the dependency unit. Helga Zimmerer was the assigned dependency case worker, but she was on vacation at the time of Stacy's placement in shelter care. Flynn covered the case in Zimmerer's absence.
[3] Appellant has not specifically pressed this variant of a due process challenge. Following argument we asked for supplemental briefing on the adequacy of notice and advisement concerning the consequences of failing to appear. Because we consider the constitutional application of local "default" procedures in dependency cases to be a matter of great public importance, we allow an exception to the general rule that a reviewing court should decline to consider points not raised below. (See generally, 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 315, pp. 326-327.)
[4] As recently pointed out in In re Brian W. (1996) 48 Cal.App.4th 429, 433, footnote 3 [56 Cal.Rptr.2d 1], ". . . under the statutory scheme, although the juvenile court has authority to order a parent to appear in court at a specified place and time (§ 323), the parent's willful failure to appear constitutes contempt (§ 213), not `default.' A `default' occurs when a defendant in a civil action fails to answer. (Code Civ. Proc., §585, subd. (b).)"
Here, appellant entered a denial at the detention proceeding and was represented by counsel at the settlement conference. She was not in default within the meaning of Code of Civil Procedure section 585 In any event, that statute applies to "actions." A dependency proceeding is a special proceeding, not an action. (Code Civ. Proc., §§ 22, 23.) We know of no statute governing a "default" in dependency proceedings. We agree with the courts inIn re Brian W., supra, 48 Cal.App.4th at page 433, footnote 3 and In re Dolly D., supra, 41 Cal.App.4th at pages 445-445 that the injection of "default" language into dependency proceedings is inaccurate and misleading.
[5] All references to rules are to the California Rules of Court.
[6] This statute reads: "The probation officer shall upon order of any court in any matter involving the custody, status or welfare of a minor or minors, make an investigation of appropriate facts and circumstances and prepare and file with the court written reports and written recommendations in reference to such matters. The court is authorized to receive and consider the report and recommendations of the probation officer in determining any such matter." (§ 281.)
As in this case, the board of supervisorscan delegate to the county welfare department the duties of the probation officers. (§ 272, subd. (a)(1).) In section 300 proceedings, the term "probation officer" includes a social worker in the county agency responsible for administering child welfare. (Rule 1401(a)(12).)
[7] Rule 1450(c) provides: "A social worker's report that contains information relevant to the jurisdiction hearing shall be admissible if, on the request of the parent or guardian, the probation officer or social worker is made available to be cross-examined on the contents of the report."
[8] They are also social studies within the meaning of section 355, subdivision (b)(1), as amended in Statutes 1996, chapter 36, section 1, in effect after the events in question here. This provision now reads: "For purposes of this section, `social study' means any written report furnished to the juvenile court and to all parties or their counsel by the county probation or welfare department in any matter involving the custody, status, or welfare of a minor in a dependency proceeding. . . ." (Italics added.)
[9] The Department questions the standard for determining harmless error, pointing to cases invoking the People v.Watson (1956) 46 Cal.2d 818 [299 P.2d 243] "reasonably probable" standard of prejudice. (See In re Ronald R. (1995)37 Cal.App.4th 1186, 1195 [44 Cal.Rptr.2d 22]; In re Nalani C.
(1988) 199 Cal.App.3d 1017, 1028 [245 Cal.Rptr. 264].) These cases involved violations of statutory rights. Here we are talking about constitutional denial of due process. *Page 1428