Filed 6/16/14  Veronica R. v. Super. Ct. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| VERONICA R., | F069122 |
| Petitioner, | |
| v. | (Super. Ct. Nos. MJP017114, MJP017115) |
| THE SUPERIOR COURT OF MADERA COUNTY, | **OPINION** |
| Respondent; | |
| MADERA COUNTY DEPARTMENT OF SOCIAL SERVICES/CHILD WELFARE SERVICES, | |
| Real Party in Interest. | |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Thomas L. Bender, Judge.

Lusine M. Vardanova, for Petitioner.

No appearance for Respondent.

Douglas Nelson, County Counsel, and Miranda P. Neal, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Cornell, Acting P.J., Detjen, J., and Franson, J.

Petitioner, Veronica R. (mother), filed an extraordinary writ petition (Cal. Rules of Court, rule 8.452) regarding her minor children, Joseph D. (Joseph) and Gianna D. (Gianna). Mother seeks relief from the juvenile court's orders issued at the six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e))[1] terminating her family reunification services (services) and setting a section 366.26 hearing for July 15, 2014. Specifically, mother contends (1) she was offered neither parenting classes nor the opportunity to participate in a program of group therapy for trauma victims (trauma group) being offered at Madera County Behavioral Health Services (BHS), and therefore the evidence was insufficient to support the court's finding that she was offered reasonable services; (2) in denying her request for a continuance of the review hearing, the court abused its discretion and violated mother's due process rights; and (3) she was not provided adequate notice of the six-month review hearing, in violation of her due process rights. We will deny the petition.

## FACTS AND BACKGROUND

Gianna was born on May 15, 2013. The next day, she and mother tested positive for amphetamines. Mother admitted to a social worker that she had used methamphetamine throughout her pregnancy, most recently the day before Gianna's birth. On May 17, 2013, Gianna and Joseph, age 11, were detained and placed in the home of a relative. A juvenile dependency petition (§ 300) was filed May 21, 2013, alleging that Gianna and Joseph came within the jurisdiction of the juvenile court under section 300.

A detention hearing was held on May 22, 2013, at which the court adopted the findings and orders recommended by the Madera County Department of Social Services (department), including orders that both children be detained, with "temporary placement and care of the child[ren] … vested with the [department]," and the department provide

---

**1** All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

various services to mother, including substance abuse evaluation and any recommended treatment, mental health evaluation and any recommended treatment, and parenting classes.

The petition was sustained at the jurisdiction hearing on June 13, 2013.

On June 28, 2013, the department filed a disposition report, recommending that Joseph and Gianna be adjudged dependents of the court. Attached to the report was a proposed case plan, which called for mother to participate in weekly sessions of mental health counseling addressing "domestic violence, anger issues and substance abuse issues"; "actively participate in [an] outpatient drug program, and follow all treatment recommendations"; and comply with the department's requests for random drug testing within 24 hours of such requests. The proposed case plan did not mention parenting classes.

At the disposition hearing on July 23, 2013, the juvenile court declared Gianna and Joseph dependents of the court; approved, and ordered that mother and the department comply with, the case plan; and set a six-month review hearing for January 21, 2014.[2]

A status review report filed by the department on January 16 (January 16 report), states the following:

Mother enrolled in "alcohol and other drug … treatment" (AOD) in June 2013, and as of December 6, 2013, she had "overall" good attendance and was "engag[ing] well" in group therapy. However, mother's social worker was informed that mother stopped attending AOD as of December 31, 2013.[3] A component of AOD was

---

[2]    Except as otherwise indicated, all further references to months and dates of events are to months and dates in 2014.

[3]    The report states: "Social Worker Ramos was informed on 1/14/2014, that [mother] stopped attending AOD treatment, as of 12/13/*2014*." (Italics added.) The reference to December 14, 2014, is obviously a typographical error.

3

participation in "self-help meetings, such as AA/NA," but mother's AOD counselor reported mother had participated in "possibly only one or two" such meetings.

Mother had "only drug tested for the [d]epartment two times." One test was negative and the other, on December 12, 2013, was positive for marijuana. She was asked to submit to drug testing on nine other occasions between July 17, 2013, and December 26, 2013, but in each instance she failed to do so. Mother "reported several times being ill as the reason for not drug testing."

Mother's therapist at BHS reported mother had "been inconsistent in meeting with her since her case was opened" and only within the previous three weeks, when she attended two out of three appointments, had she "demonstrated an effort in attending mental health treatment."

On "several occasions," mother's visits with the children had to be rescheduled. However, mother's social worker was unable to coordinate a visitation schedule because mother had "not responded to [the social worker's] calls and home visits."

The report concludes: "[Mother] has not made substantial progress during this review period. [She] has not been able to successfully complete a substance abuse treatment program and has not made any progress in mental health treatment." The department recommended mother continue to receive services.

The report also stated that at a "review staffing" on December 6, 2013, those present "felt that [mother] would benefit from the Trauma group" being offered at BHS; mother's AOD counselor "indicated she would make the referral"; and "[mother] has been referred to the Trauma group, which is scheduled to commence on 1/23/2014."

A "CASE PLAN UPDATE," which was apparently attached to the January 16 report, added to the case plan a requirement that mother "actively participate and attend NA/AA meetings twice per week." The updated plan did not mention trauma group.

4

Mother was in court on January 21, the date set for the review hearing, at which time the court continued the hearing to February 4, so that notice could be provided to Gianna's father.

On February 4, again with mother present, the court granted mother's request to set a contested hearing, and continued the matter to February 25.

On February 24, the department filed an addendum report, recommending that mother's services be terminated. The report stated that mother had "completely stopped participating" in services, including substance abuse treatment, mental health treatment and drug testing as of December 31, 2013; had failed to contact her social worker to schedule visits with her children; and "[was] not making herself available to meet with her assigned Social Worker." The report also stated that mother's AOD counselor had informed mother's social worker that mother "would be discharg[ed] from substance abuse treatment as of 2/19/2014, for noncompliance with substance abuse treatment," and that mother's mental health therapist indicated she "would be discharging [mother] as of 2/27/2014, for noncompliance with mental health treatment."

Mother did not appear for the review hearing on February 25. Mother's counsel informed the court she had no contact with mother since the previous hearing, three weeks earlier, and that mother had informed the court clerk she was "stuck in Nevada." Because the department had only the previous day changed its recommendation to terminate services, the court continued the review hearing to March 18.

On March 14, the department filed a second addendum report stating the following: The department had "made efforts to reach [mother] by phone and in person, with no success." Also, the department had received letters from mother's former mental health counselor and AOD counselor stating, respectively, that mother had been "terminated … from mental health treatment for noncompliance" and had been "discharged … from substance abuse treatment as a result of [mother's] inability to follow through with AOD treatment."

5

Mother appeared in court on March 18, at which time her counsel told the court she (counsel) had made contact with mother just that day and that she was not ready to proceed, and asked that the hearing be continued. The court denied the request and proceeded with the hearing. The court received into evidence the department's January 16 report and the two addendum reports, and mother testified. Thereafter, the court ordered mother's services terminated and set a section 366.26 hearing for July 15.

The court adopted the department's recommended findings and orders. Those findings included the following: "Reasonable services designed to help the mother overcome the problems which led to the children's initial removal and continued out-of-home care have been provided or offered to the mother."

## DISCUSSION

### I. *Reasonable Services*

Under section 366.21, subdivision (e), where, as here, multiple sibling children are removed from the parents' custody at the same time and at least one of those children is under age three at the time of removal, the juvenile court, at the six-month review hearing, may terminate reunification services and schedule a section 366.26 hearing only if the court finds, among other things, that reasonable services have been provided. Here, as indicated above, mother challenges the court's finding that the department provided reasonable services, on the grounds that the department did not offer her parenting classes or the opportunity to participate in trauma group. This challenge is without merit.[4]

---

[4] In order to terminate services and set a section 366.26 hearing, the court was also required to find that "the parent failed to [1] participate regularly and [2] make substantive progress in a court-ordered treatment plan …." (§ 366.21, subd. (e), 3d par.) The court made both of these findings, neither of which mother challenges in the instant writ proceeding.

6

A. *Additional Legal Background*

A finding that reasonable services were provided, like other findings under section 366.21, is reviewed under the substantial evidence test. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 971 (*Alvin R.*).) In applying this standard of review, we adhere to the following principles: "It is the trial court's role to assess the credibility of the various witnesses, to weigh the evidence to resolve the conflicts in the evidence. We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence. [Citations.] Under the substantial evidence rule, we must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.)

"'In almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.]" (*In re Julie M.* (1999) 69 Cal.App.4th 41, 48 (*Julie M.*).) "Services will be found reasonable if the [d]epartment has 'identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult ....' [Citation.]" (*Alvin R.*, *supra*, 108 Cal.App.4th at pp. 972-973.)

"The adequacy of a reunification plan and of the department's efforts are judged according to the circumstances of each case." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362.) Relevant circumstances include a parent's willingness to participate in services. Reunification services are voluntary and the department cannot force an unwilling parent to participate in the case plan. (*Id*. at p. 1365.) The department is not

7

required to "take the parent by the hand and escort him or her to and through classes or counseling sessions." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.) Therefore, in assessing the reasonableness of reunification services, the juvenile court evaluates not only the department's efforts to assist the parent in accessing the services, but also the parent's efforts to avail him or herself of those services.

### B. *Trauma Group*

According to the January 16 report, in December 2013, those present at the department "staffing" were of the opinion that mother "would benefit from," and that mother "[had] been referred" to, trauma group. Mother testified at the review hearing that she had received referrals only to AOD and mental health services, and she asserts, based on this testimony and the absence of any mention of trauma group in either of the department's subsequent addendum reports, that "it appears [she] was never started on [trauma group]." This establishes, mother argues, that she did not receive reasonable services. We disagree.

First, under the principles of judicial review summarized above, we must reject mother's testimony that she was not referred to trauma group, and credit the evidence to the contrary set forth in the department's January 16 report. From the evidence of the referral and the absence of any further mention of trauma group in the record, we may infer mother did not follow through on the referral. On this record, given the relevant circumstances—mother apparently did not avail herself of services that were offered to her—the absence of evidence that mother participated in trauma group does not establish that she was not provided reasonable services.

Moreover, even if we assume the department bears the entire responsibility for mother's failure to participate in trauma group, mother's claim fails. It was mother's drug use that led to the loss of custody of her children, and to address this problem, the department offered a multitude of services: drug testing, drug abuse treatment, substance abuse self-help groups and mental health counseling. If the department was remiss in not

8

also making trauma group available to mother, this establishes, at most, that the services offered were not those that "'might be provided in an ideal world.'" (*Julie M.*, *supra*, 69 Cal.App.4th at p. 48.)  As demonstrated above, this is not sufficient to establish that reasonable services were not provided under the circumstances.  (*Ibid.*)

       C. *Parenting Classes*

As indicated earlier, at the detention hearing, the court, following the department's recommendation, ordered the department provide parenting classes, but the department did not include parenting classes in the case plan.  Mother asserts, "Although the department identified the need for a parenting class at the beginning of the case, it failed to offer such services during the reunification period."  She contends, "This once again shows [she] did not receive reasonable services …."  However, as we explain below, mother has forfeited this claim.

Preliminarily, we set forth additional procedural background.  At the outset of the disposition hearing, mother told the court it was her position that her children should be returned to her immediately.  After mother's testimony, the court stated its tentative decision was to follow the department's recommendation, i.e., that the children be removed from mother's custody and that mother receive services as set forth in the case plan.  At that point, discussion ensued during which mother's counsel urged that mother be granted "additional visits," but did not raise the issue of the absence of any provision in the case plan for parenting classes or in any other way challenge the adequacy of the case plan.  The court approved the case plan and ordered that mother and the department comply with it.  At no time did mother appeal the disposition order or move to modify it (§ 388).

Although phrased in terms as a challenge to the reasonableness of services, mother's claim is, in essence, a challenge to the court's failure to include parenting classes in the services ordered at the disposition hearing.  (See *John F. v. Superior Court* (1996) 43 Cal.App.4th 400, 405.)  The disposition order in juvenile dependency matters

is an appealable order that is ""'"final and binding."'"" (*In re S.B.* (2009) 46 Cal.4th 529, 532.) By failing to appeal, or file a petition to modify, the dispositional order, mother has forfeited any complaint she may have regarding the plan and may not fault the department for complying with it. (*Julie M.*, *supra*, 69 Cal.App.4th at p. 47; *John F.*, at pp. 404-405.)

Further, appellant's argument is without merit. The department's failure to offer parenting classes may render the services offered imperfect, but it does not establish those services were not reasonable. (*Julie M.*, *supra*, 69 Cal.App.4th at p. 48.)

## II.     *Notice of Review Hearing*

Mother contends she was not given adequate notice of the March 18 review hearing and/or of the fact that the department had changed its recommendation to termination of services, in violation of mother's right to due process of law. There is no merit to this contention.

Due process requires that parents be notified of juvenile court proceedings affecting their interest in the custody of their children by means of "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Citation.]" (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1418.) "A parent's fundamental right to adequate notice and the opportunity to be heard in dependency matters involving potential deprivation of the parental interest [citation] has little, if any, value unless the parent is advised of the *nature* of the hearing giving rise to that opportunity, including what will be decided therein. Only with adequate advisement can one choose to appear or not, to prepare or not, and to defend or not." (*In re Stacy T.* (1997) 52 Cal.App.4th 1415, 1424.) The burden is on the department "to make every reasonable effort in attempting to inform parents of all hearings." (*In re DeJohn B.* (2000) 84 Cal.App.4th 100, 102.)

10

At the review hearing, mother told the court that she calls the court "all the time" because she needs to obtain copies of "reports," and that she learned of the March 18 hearing when she called that day. However, mother does not suggest what the department reasonably could have done to provide mother with notice of the hearing and the changed recommendation. The record shows the following:

The February 24 addendum report states that the decision to recommend termination of services was made at a staffing on February 18, at which mother was not present, although she had called the department earlier that day to confirm the date and time. Although aware of the February 25 hearing, mother did not attend. According to the March 14 addendum report, the department unsuccessfully attempted to contact mother by telephone, and on March 10, a social work intern went to mother's home, where she discovered there was no one home and on the front window was posted a notice stating that the occupants of the home had been evicted on February 14. At the review hearing, mother told the court that "shortly after" the February 4 hearing, she had moved to a new address, but she admitted she had not informed either her social worker or her attorney that she had moved.

The foregoing shows that the department scheduled a meeting with mother, which she did not attend, and thereafter made efforts to locate mother, but that during the time the department might have notified mother of the hearing and changed recommendation, mother, by failing to communicate with the department, made it virtually impossible for the department to find her. The department's efforts were more than reasonable under the circumstances. There was no due process violation.

Moreover, any failure to give mother proper notice of the March 18 hearing was harmless. Failure to give a parent proper notice of hearings in dependency proceedings is subject to harmless error analysis. (*In re A.D.* (2011) 196 Cal.App.4th 1319, 1327 (*A.D.*).) In *A.D.*, the court found that failure to provide a parent with proper notice of a 12-month permanency hearing (§ 366.21, subd. (f)) was harmless because in the relevant

11

time period the parent "failed to participate meaningfully in [the parent's] case plan or maintain contact with the social worker," and therefore "[t]here [was] no basis on which the juvenile court could have found more services would have been in [the dependent child's] best interests." (*A.D.*, at p. 1327.) Similarly, in the instant case, given that mother completely stopped participating in all court ordered services in December 2013, and that she failed to advise the department of her whereabouts and otherwise maintain contact with her social worker, there is no reason to believe the court would have continued services.

### III. Request for Continuance

Mother contends the court abused its discretion in denying her request for a continuance of the review hearing. We disagree.

Continuances in dependency proceedings "shall be granted only on a showing of good cause." (§ 352.) "'[T]ime is of the essence in offering permanent planning for dependent children.'" (*In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1187 (*Gerald J.*).) Thus, continuances in dependency cases "should be difficult to obtain." (*Jeff M. v. Superior Court* (1997) 56 Cal.App.4th 1238, 1242.) Indeed, courts have interpreted section 352 as embodying "an express discouragement of continuances." (*In re Karla C.* (2003) 113 Cal.App.4th 166, 179.) "A reviewing court will reverse an order denying a continuance only upon a showing of an abuse of discretion." (*Gerald J.*, at p. 1187.) An abuse of discretion is shown when the trial court has made "'"an arbitrary, capricious, or patently absurd determination."'" (*In re Mark V.* (1986) 177 Cal.App.3d 754, 759.)

As indicated above, mother was not present in court on February 25, when the date of the March 18 hearing was set, and she apparently advised the clerk of the court by telephone that she was "stuck in Nevada." No further explanation appears in the record. As also indicated above, during the key time period when she might have received notice, she had moved and had advised neither the department nor her attorney. Asked by the court why she had failed to keep her attorney and the department apprised of her address,

mother answered that "it was supposed to be temporary." Her counsel told the court that she had "left messages and sent letters" without being able to make contact with mother, and that after mother "left [counsel] a voicemail asking for an appointment," counsel scheduled an appointment, but mother "was stuck in Los Angeles and could not make it."

Mother's counsel asked for a continuance on the ground that she had not been able to confer with her client. The court found there was not good cause to continue the hearing "in light of what [mother] has done and not maintaining contact." This finding was well within the court's discretion. As demonstrated above, counsel was unable to communicate with mother because mother made it virtually impossible for counsel to do so. And, as also demonstrated above, there is no indication a different result would have been reached if a continuance had been granted. (*See Gerald J.*, *supra*, 1 Cal.App.4th at p. 1187.)

Mother asserts that had the court granted a continuance, she would have been able to subpoena and confront her AOD counselor and mental health therapist regarding (1) their respective letters, referenced in the two addendum reports admitted into evidence at the review hearing, stating that AOD and mental health services were being terminated, as well as (2) other matters relating to mother's participation, or lack of participation, in those services. For this reason, mother also argues that as a result of the denial of her request for a continuance, she was "not afforded a meaningful hearing," in violation of her due process rights. (See *In re Matthew P.* (1999) 71 Cal.App.4th 841, 851 ["'A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses'"].) There is no merit to this contention.

Mother's counsel, in requesting a continuance, made no mention of any inability, or, indeed, any need, to subpoena any witnesses. Moreover, the February 24 addendum report notified counsel, if not mother, that the determinations to terminate mother from both AOD and mental health services had been made. The denial of the continuance at the review hearing three weeks after the filing of the February 24 report had no bearing

13

on mother's ability to subpoena the witnesses who could have spoken to these determinations. Moreover, any impairment of the ability of mother and her counsel to counter the evidence against mother and to present favorable evidence was caused by counsel's inability to confer with mother in the weeks preceding the review hearing was the direct result of mother's failure to communicate with her counsel. The court did not abuse its discretion or deprive mother of a meaningful hearing in denying mother's request for a continuance.

## DISPOSITION

The petition for extraordinary writ is dismissed. This opinion is immediately final as to this court.

14