Filed 7/29/22 In re M.W. CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re M.W., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> C.W., <br><br> Defendant and Appellant. | A162849 <br><br> (Alameda County <br> Super. Ct. No. JD03155201) |

C.W. (mother) appeals from an order taking jurisdiction over her child, M.W. (minor), and removing minor from her custody. Mother asserts the court erred by admitting an expert report into evidence when the expert was unavailable for cross-examination. She further asserts the order removing minor from her custody was not supported by substantial evidence. We disagree and affirm the order.

## I. BACKGROUND

The Alameda County Social Services Agency (Agency) filed a petition under Welfare and Institutions Code[1] section 300, subdivision (c), alleging

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise noted.

minor suffered and was at substantial risk of harm due to mother subjecting minor to numerous investigations and examinations regarding alleged sexual abuse with no evidence or findings that any sexual abuse occurred.

Prior to the filing of the petition, mother had reported minor's father (father) approximately eight times to the Agency and the police department for various issues, such as general neglect, maltreatment of minor, a custody violation, physical abuse, and sexual abuse. These reports resulted in police investigations, three Child Abuse Listening, Interviewing, and Coordination center (CALICO) interviews, and a sexual assault response team (SART) examination. None of the reports were substantiated, and the multiple investigations, interviews, and examinations did not reveal any findings of sexual abuse. Minor did, however, make some statements that could be interpreted as mother coaching minor to report abuse or otherwise reject father. Minor also denied any sexual or physical abuse during interviews with the Agency.

Dr. James Crawford-Jakubiak, who conducted minor's SART exam at Children's Hospital Oakland, testified at a family court hearing.[2] He noted it was incredibly uncommon for a sexual predator to continue such conduct after police and other professionals' involvement, yet mother had made ongoing allegations for multiple years and informed him she believes father is continuing to sexually abuse minor. Dr. Crawford-Jakubiak stated "he has no doubt in his mind that [minor] is either being sexually abused by the father or emotionally abused by the mother . . . . [I]f [minor] is being emotionally abused by the mother, there is/would be unbelievable emotional

---

[2] The parents had been involved in contentious proceedings since 2015 regarding custody and restraining orders in the Family Court Division of the Alameda County Superior Court (family court).

and psychological damage." Following the medical examination, however, Dr. Crawford-Jakubiak made no findings of sexual abuse, although he noted that does not indicate such abuse did not occur.

Also, during this time, Victoria Coad, Ph.D. was appointed as a "3118[3] Sexual Assault Evaluator" by the family court as part of those proceedings due to the ongoing allegations of sexual abuse. Dr. Coad stated she was unable to identify any evidence of sexual abuse apart from allegations made by the maternal family. She notes mother was instructed to stop taking photos and videos of minor, but continued to do so. She also stated mother claimed father was fired from his job at a church for sexually inappropriate conduct, but Dr. Coad confirmed with the church this was untrue.

The Agency's initial hearing report concluded mother's insistence that father sexually abused minor, despite multiple forensic interviews and exams finding no evidence of abuse, constituted emotional abuse to minor. The report noted mother's conduct and beliefs were preventing minor and father from having a normal parent/child relationship, and minor has expressed sadness and confusion as to why she cannot visit father. Minor "is always excited" to see her father during visitation and cries when it is time to leave because she wants longer visits. The Agency noted during a child family team meeting that mother and the maternal family were focused on the allegations of sexual abuse, and it was "difficult to come up with a plan to address" the concerns of emotional abuse because mother lacked insight into the situation.

Mother filed a multipage response to the Agency's report, which took issue with much of the report, such as disputing she requested certain interviews, arguing she was instructed to take photographs and videos of

---

[3] Family Code section 3118.

minor, asserting father prevented minor from enrolling in preschool and therapy, and stating minor's reports of sexual abuse and her heightened reactions to visiting father decreased after he was limited to supervised visits. Mother also filed a demurrer to the petition, arguing the allegation against her was conclusory and vague.

The Agency recommended the court find the petition true. In its subsequent disposition report, it recommended minor remain with mother, and mother receive family maintenance services to ensure she complies with court orders and does not engage in coaching or exposing minor to invasive investigations or examinations. The Agency also recommended father receive family reunification services to support his and minor's bonding and transition to increased visitation.

Prior to a hearing on the pending issues, the parties received Dr. Coad's report (the 3118 report) and mother withdrew her demurrer. The parties also received a custody and access evaluation (custody evaluation) prepared by Dr. Cheryl Jacques, who had been appointed by the family court as a "730[4] evaluator."

The Agency subsequently filed an amended petition expanding on the statements set forth in the original petition. The amended petition further asserted minor was at substantial risk of harm due to mother coaching minor to make false allegations about sexual abuse by father, isolating minor from the paternal family, and instructing minor to reject father with the message that he is bad or dangerous. The amended petition referenced the findings in both the 3118 report and the custody evaluation.

The Agency filed a detention report, noting the 3118 report and the custody evaluation "brought additional information and increased safety

_____

4 Evidence Code section 730.

concerns to light, which places the minor . . . at substantial risk of suffering serious emotional damage if she continues to reside in the care of [mother]." After a contested detention hearing, the court ordered minor detained. She was placed with her paternal grandparents.

In the subsequent jurisdiction/disposition report, the Agency recommended the court find the amended petition true, give father custody of minor with family maintenance services, and order family reunification services for mother. The report noted minor appeared happy and comfortable with her paternal grandparents, and she stated visits with both parents were going well. The report stated, based on its lengthy investigation, the 3118 report, and the custody evaluation, "it is the Agency assessment that the allegations of sexual abuse has [*sic*] been false" and resulted in minor being alienated from father and minor's paternal relatives. The report further noted the coaching had an emotional impact on minor, as she "is quick to identify a loaded question when it pertains to her parents" and is "reluctant to answer questions and is confused about who she is supposed to align with or where she is supposed to be." The report recounts the social worker's discussions with mother, who continued to express concern that father will abuse minor if he is allowed unsupervised contact, stated the allegations against her of emotional abuse are untrue, and asserted the 3118 report contained erroneous information.

The Agency subsequently filed an addendum report, restating the same recommendation contained in the prior jurisdiction/disposition report. The report noted minor's therapist was working with minor on truth-telling, separation anxiety, and some regressive behaviors. Minor's therapist expressed concern regarding future coparenting and stated the importance of both parents having the same rules, boundaries, and discipline for minor.

The social worker also spoke with mother's therapist, who stated he was working with mother on posttraumatic stress disorder and an " 'irrational belief system,' " which he believed would treat the issues identified in the 3118 report and the custody evaluation. Mother's therapist believes mother has gained some insight into her actions, but believes she was not intentionally harming minor but rather trying to protect her. Mother's visitation with minor was reportedly appropriate and going well.

The juvenile court conducted a multiday contested jurisdiction and disposition hearing. Numerous witnesses testified, including Dr. Jacques, Dr. Crawford-Jakubiak, and the social worker. Dr. Crawford-Jakubiak repeated his belief that minor was either being sexually abused by father or emotionally abused by mother, and "[t]hey can't both be false." Dr. Jacques testified she believed minor suffered emotional abuse from mother. The social worker testified mother failed to take responsibility, was unable to explain the impact on minor, and could not explain how she was addressing these concerns in therapy. Mother, maternal grandmother, and an employee for the maternal grandparents provided testimony focused on the alleged sexual abuse by father. The court admitted into evidence the Agency reports, the 3118 report, and the custody evaluation.

The court subsequently found the amended petition true. In assessing whether minor was subjected to sexual abuse or emotional abuse, the court concluded minor had experienced emotional abuse. It further found mother had made insufficient progress toward resolving the issues and was "still committed to her script" of father's sexual abuse. The court placed minor with father and ordered family maintenance services. Mother timely appealed.

## II. DISCUSSION

On appeal, mother raises two issues. First, she asserts the court erred in allowing the 3118 report into evidence because its author, Dr. Coad, was unavailable for cross-examination. Second, mother asserts substantial evidence did not support the juvenile court's order removing minor from her custody. We address each argument below.

### A. *The 3118 Report*

At the beginning of the jurisdiction/disposition hearing, the juvenile court admitted the 3118 report into evidence. However, during the course of the hearing—and after Dr. Coad provided testimony on direct examination— she became unavailable to complete the cross-examination by mother's counsel due to a serious illness. Following argument of the parties, the court concluded the 3118 report would remain admitted into evidence, but struck Dr. Coad's testimony. Mother assets the court erred by not also striking the 3118 report. We disagree.

#### 1. *Scope of Mother's Appeal*

As an initial matter, the Agency asserts mother is not appealing the court's jurisdiction decision, but only the dispositional findings and orders. The Agency notes any right to cross-examination applies only to the jurisdiction hearing. Mother disputes this interpretation of her appeal and contends she challenged use of the 3118 report as to both the jurisdiction and disposition findings.

The Agency is correct that mother's brief does not specifically argue the court erred in asserting jurisdiction over minor. However, we also note the court conducted a joint jurisdictional and dispositional hearing, and the 3118 report was admitted into evidence as part of that joint hearing. Mother's notice of appeal states she is appealing from "All findings and orders made by

7

the court . . . , including but not limited to the Jurisdiction Disposition hearing." Likewise, her opening brief notes section 395 "authorizes this appeal from findings and orders made under sections 360 *and 300*."[5] (Italics added.) And mother's opening brief argues the Agency witnesses testified they relied on the 3118 report to file the amended petition against Mother.

We need not resolve this dispute because even assuming mother's appeal properly challenges the court's admission of the 3118 report in connection with its jurisdictional findings, we conclude for the reasons set forth below that the court did not err in doing so.

### 2. Admissibility

Family Code section 3110 et seq. sets forth guidelines for court-appointed investigators and evaluators. Family Code section 3118 requires a court to obtain an evaluation, investigation, or assessment in cases involving child sexual abuse allegations, and the family court appointed Dr. Coad pursuant to that section.[6]

Family Code section 3118 does not contain an express requirement that an evaluator or investigator must testify about the contents of his or her report, and mother has not identified any authority stating a section 3118 evaluator must be subject to cross-examination. However, Family Code section 3115 provides: "A statement, whether written or oral, or conduct shall not be held to constitute a waiver by a party of the right to cross-examine the court-appointed investigator, unless the statement is made, or the conduct occurs, after the report has been received by a party or the

---

[5] Section 300 addresses jurisdictional findings.

[6] Mother also argues experts appointed by the court are required to testify under Evidence Code section 730. However, Dr. Coad was appointed under Family Code section 3118, not Evidence Code section 730.

8

party's attorney." (Accord, 33 Cal.Jur.3d (May 2022 update) Family Law, § 1022 ["Where the court has directed a custody investigation, due process of law requires that each party receive a copy of the report, be given an opportunity to cross-examine the investigator and to subpoena and examine persons whose hearsay statements are contained in the report, and be permitted to introduce evidence by way of rebuttal."].)

The Agency contends the court did not abuse its discretion in admitting the 3118 report into evidence because it was previously admitted without objection—albeit before Dr. Coad's unavailability—and the court properly found the report admissible under section 355.

We need not determine whether Family Code section 3115 required Dr. Coad to be available for cross-examination in order for her report to be admissible. Even if we assumed Family Code section 3115 imposed such a requirement, we conclude any error in the report's admission was harmless.[7] (*In re Christopher L.*, *supra*, 56 Cal.App.5th at p. 1177 ["even errors of a constitutional dimension can be subject to a harmless error analysis in dependency proceedings, given the unique nature of such proceedings, unless it is impossible to assess prejudice without engaging in speculation"].)

_____

[7] "To assess whether an error in dependency proceedings is harmless, some Courts of Appeal have applied a *Chapman* [*v. California* (1967) 386 U.S. 18] 'harmless beyond a reasonable doubt' standard, and at least two Supreme Court cases have embraced the [*People v.*] *Watson* [(1956) 46 Cal.2d 818] more probable than not standard. [Citation.] *Watson* requires a 'reasonable probability of a more favorable outcome,' absent the challenged errors, in order for an error to warrant reversal. [Citations.] Under *Chapman*, by contrast, 'the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' " (*In re Christopher L.* (2020) 56 Cal.App.5th 1172, 1187–1188.) We conclude any error would be harmless under either standard.

First, key factual findings and conclusions from the 3118 report were contained within the jurisdiction/disposition report filed by the Agency. At a jurisdictional hearing "[a]ny legally admissible evidence that is relevant to the circumstances or acts that are alleged to bring the minor within the jurisdiction of the juvenile court is admissible and may be received in evidence." (§ 355, subd. (a).) Section 355, subdivision (b) allows a court to admit and make a finding of jurisdiction based on a social study and the hearsay evidence contained therein. While the preparer of the social study must be available for cross-examination, the statute does not impose such a requirement for hearsay contained within the social study. (§ 355, subds. (b), (b)(2).) Nor does the code require that hearsay statements be struck if the declarant is not available for cross-examination. Section 355 only provides that an objection to "specific hearsay evidence" would preclude that evidence from "be[ing] sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based" if no exception applied. (§ 355, subd. (c)(1); see also Seiser & Kumli, Cal. Juvenile Courts Practice and Procedures (2022) § 2.110[12][b] ["in most instances the hearsay statements will be admitted despite the objection, but the juvenile court must take the unavailability of the declarant as going to the weight to be given the hearsay statements, particularly if they do not meet the criteria for one of the exceptions"].) Section 355 also sets forth various exceptions to this general rule and allows courts to rely on such hearsay despite objections. As relevant here, hearsay evidence may be sufficient to support a jurisdictional finding if the petitioner establishes the hearsay declarant is a psychiatrist, psychologist, or marriage and family therapist. (§ 355, subd. (c)(1)(C); Pen. Code, § 11165.7, subd. (a)(21).)

10

Here, the hearsay statements from the 3118 report, contained within the jurisdiction report, fall within the exception of section 355, subdivision (c)(1)(C) because Dr. Coad is both a licensed clinical psychologist and a marriage and family therapist. As such, the court could properly rely on these statements to support a jurisdictional finding—despite her unavailability to testify. And the excerpts from the 3118 report contained in the jurisdiction report are sufficient to support the court's jurisdictional finding.

Mother, relying on *In re Stacy T.* (1997) 52 Cal.App.4th 1415 (*Stacy T.*), argues the right to cross-examine the social worker who prepared the jurisdiction/disposition report also includes the right to cross-examine individuals who prepared any attached reports.

We find *Stacy T.* distinguishable. That case involved two fact sheets which contained "crucial facts" supporting "the decision to remove [the minor] from appellant's care." (*Stacy T., supra*, 52 Cal.App.4th at p. 1425.) Those fact sheets had been prepared by other social workers who were not present at the settlement conference, while another social worker who prepared the settlement conference report was present. (*Id.* at pp. 1424–1425.) The court noted the fact sheets constituted a social study under section 281[8] and California Rules of Court, rule 5.684(c),[9] and the reports continued to meet the definition of a social study despite being incorporated into the settlement

---

[8] Section 281 states in relevant part: "The probation officer shall upon order of any court in any matter involving the custody, status, or welfare of a minor or minors, make an investigation of appropriate facts and circumstances and prepare and file with the court written reports and written recommendations in reference to such matters."

[9] California Rules of Court, rule 5.684 was previously numbered as rule 1450(c).

11

conference report. (*Stacy T.*, at p. 1425.) Accordingly, the court concluded the social workers who prepared the fact sheets were required to be available for cross-examination. (*Ibid.*; accord, § 355, subd. (b)(2) ["The preparer of the social study shall be made available for cross-examination upon a timely request by a party."].) Here, the report at issue is not a social study. Accordingly, section 355 does not impose a right to cross-examination as was the case in *Stacy T.* (See also *In re Corey A.* (1991) 227 Cal.App.3d 339, 346; *In re Vincent G.* (2008) 162 Cal.App.4th 238, 243.)

Second, even if the court disregarded the 3118 report, mother has not argued it would alter the court's ruling. Specifically, mother does not contend the jurisdictional finding would not be supported by a preponderance of the evidence without the 3118 report.[10] Mother has thus waived this argument. (See *Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7 ["Issues not raised in the appellant's opening brief are deemed waived or abandoned."].) In any event, we note the record contains other evidence that could support a jurisdictional finding. Most notably, the record contains the custody evaluation, which was based on extensive interviews, psychological testing, observations, and review of case materials. In its analysis and conclusions section, Dr. Jacques commented: "Both Dr. Coad and I believe as a result of our separate investigations that [mother] has made false allegations against [father]. Independently, the two evaluators in this case have arrived at the same conclusion. The false allegations made by mother against father put [minor] at risk." The report further states in relevant

---

[10] The juvenile court's jurisdictional finding that a minor is a person described in the dependency statute must be supported by a preponderance of the evidence. (*In re A.G.* (2013) 220 Cal.App.4th 675, 682.) We review such findings for substantial evidence. (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 137.)

part: "[Mother] has misquoted and misinterpreted people and events, using or manipulating what information she has obtained to support her view of father's malevolence. In my opinion, [mother] has been malevolent in her relentless drive to incriminate father, and she has exploited her daughter to try to make this happen by coaching [minor] to make false statements about her father's sexual touching of her body." In addition to the custody evaluation, the record also contains information regarding (1) forensic interviews with law enforcement and the CALICO center, which resulted in "no findings/evidence of sexual abuse" against minor; (2) a SART examination indicating "no evidence that any form of abuse took place" during visitation between minor and father; (3) observed visitation and comments made by minor to staff; and (4) interviews with the parents. Together, these other materials provide ample support for the jurisdictional findings.

Similarly, the court did not err in considering the 3118 report when making its dispositional findings. At the dispositional phase, " 'any relevant evidence including hearsay shall be admitted pursuant to section 358, subdivision (b) to help the court determine the child's best interests.' " (*In re Madison T.* (2013) 213 Cal.App.4th 1506, 1509.) " 'Before determining the appropriate disposition, the court shall receive in evidence the social study of the child made by the social worker, any study or evaluation made by a child advocate appointed by the court, and other relevant and material evidence as may be offered . . . .' " (*Ibid.*) While mother cites various authorities for the general proposition that there is a right to cross-examination, she fails to cite any authority in the dependency context supporting her position. Nor are we aware of any. To the contrary, numerous courts have concluded the preparer of any report is not required to testify as a prerequisite to admitting the report in connection with disposition. (*In re Vincent G.* (2008)

13

162 Cal.App.4th 238, 243–244; see also *J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 536 [social service "reports are admissible regardless of whether the authors are available for cross-examination"]; accord, Seiser & Kumli, Cal. Juvenile Courts Practice and Procedures, *supra*, § 2.122 [social study is admissible at disposition hearing even if the preparer is unavailable].) Accordingly, the juvenile court did not err in admitting the 3118 report as part of the joint jurisdiction/disposition hearing.

## B. Dispositional Order

Mother next argues the dispositional order removing minor from her custody should be reversed because it was not supported by substantial evidence. We disagree.

A child adjudged a dependent minor shall not be taken from the physical custody of his or her parents unless the juvenile court finds by clear and convincing evidence that there "is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . custody." (§ 361, subd. (c)(1).) We review a dispositional order removing a child from parental custody for substantial evidence, keeping in mind the juvenile court was required to make its finding based on clear and convincing evidence. (*In re I.R.* (2021) 61 Cal.App.5th 510, 520.) Removal "is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent. The law requires that a child remain in parental custody pending the resolution of dependency proceedings, despite the problems that led the court to take jurisdiction over the child, unless the court is clearly convinced that such a disposition would harm the child." (*In re Henry V.* (2004) 119 Cal.App.4th 522, 525.)

At the dispositional hearing, the juvenile court found, "The evidence in this case has demonstrated that the mother, for whatever reasons, is still committed to her script . . . of what allegedly happened to [minor]"—i.e., that father sexually abused minor. While the court acknowledged the record lacked direct evidence of coaching minor, it noted "there is a mountain of circumstantial evidence that the mother did coach, plant, cause, this child . . . to falsely claim that [father] had molested her, was molesting her, is molesting her. [¶] And the evidence does not support this." The court noted that despite numerous investigations into the sexual abuse allegations and court-appointed expert witnesses to assess whether minor suffered sexual harm, "not one person has ever determined or found that [father] molested [minor]." Another expert, Dr. Crawford-Jakubiak, testified minor was experiencing either sexual abuse or emotional abuse. And, based on the court's assessment of the testimony, the credibility of the witnesses, and the other evidence presented, the court concluded minor was experiencing emotional abuse.

Mother cites to statements by the Agency that minor was stable, safe, happy, and well cared for prior to receipt of the 3118 report and custody evaluation.[11] She argues the Agency merely relied on the 3118 report to remove minor and failed to independently assess the actual risk to minor.

---

[11] Mother argues *In re Jasmine G.* (2000) 82 Cal.App.4th 282 is instructive. We disagree. In that case, the minor was removed from her parents due to their use of corporal punishment. (*Id.* at p. 288.) The Court of Appeal found that clear and convincing evidence indicated it was safe to return the minor to her parents' homes because the parents had "forsworn corporal punishment," expressed remorse for having used corporal punishment, attended parenting classes, and participated in therapy, and the minor was not afraid of the parents and wished to return home. (*Id.* at pp. 288–289.) While mother has participated in therapy and parenting

First, mother fails to cite any authority suggesting it is inappropriate for a social services agency to rely on a 3118 report and custody evaluation—prepared by court-appointed experts—when assessing risk to a minor. More importantly, however, mother ignores the key issue: that she and her family continued to perpetuate allegations that father was sexually abusing minor, despite multiple investigations that did not identify any evidence of sexual abuse. Nothing in the record indicates mother acknowledged the results of these investigations or that she was willing to consider the possibility that father did not sexually abuse minor. Given the totality of the evidence before the juvenile court and mother's ongoing insistence that father sexually abused minor, it was reasonable to infer that minor could not be safely placed with mother because she would continue to perpetuate the sexual abuse script. Substantial evidence supports the dispositional order removing minor from mother's custody.

## III. DISPOSITION

The juvenile court's jurisdictional and dispositional order is affirmed.

---

classes, she has continued to deny any emotional abuse and has only asserted that the experts and social worker are biased against her.

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A162849
*In re M.W.*